# EXHIBIT 4



JAGUAR

Jaguar Land Rover North America, LLC.                                    Jaguar Cars

July 10, 2008

**VIA email & DHL**

Mr. Dennis Squitieri
666 Route 17 North.
Paramus, N.J. 07652

Re:  **Jaguar Performance Agreement – Madison, NJ**

Dear Dennis:

Jaguar Land Rover North America, LLC  ("Jaguar")  is pleased to issue this Performance
Agreement (the "Agreement") and advise you of our intention to enter into a standard form of
Jaguar Dealer Agreement with Morris County Jaguar, L.L.C, dba Madison Jaguar ("MCJ" or
"you") upon the fulfillment of all of the following terms and conditions:

1.  Bankruptcy Court Approval.   The Court must enter a final, non-appealable order
approving MCJ  as the successful bidder to purchase the Jaguar assets, including the
Jaguar franchise, of Main Auto Sales, Inc. d/b/a Madison Jaguar in the action entitled In
re: Main Auto Sales, Inc. d/b/a Madison Jaguar, Case No.: 08-15493 (DHS), currently
pending in the U.S. Bankruptcy Court for the District of New Jersey.

2.  Corporate Form/Name.  Upon the issuance of any Jaguar Dealer Agreement pursuant to
paragraph 22 hereof (the "Dealer Agreement"), you will conduct your Jaguar operations
under the corporate name Morris County Jaguar, L.L.C, dba Madison Jaguar.  You will
adopt an accounting structure and financial reporting methods and forms in accordance
with Jaguar's requirements. You will obtain Jaguar's express written approval prior to
any change of your corporate name or d/b/a trade name.

3.  Facility/Site.  Upon successful acquisition of the Madison Jaguar franchise currently
located in Madison NJ your will conduct your Jaguar operations as follows: Sales will be
located at 275 Main Street, Madison NJ (the "Facility").   Service & Parts may be
temporarily located at 134 Main Street Madison, for  at least six months or up to 30
months, after which Service & Parts will be permanently relocated and combined at the
Facility. You agree that the space allocated to Jaguar at the Facility will meet or exceed
Jaguar's requirements for a dealership with a Jaguar planning volume of 189 units as set
forth in the Facilities and Personnel Guide attached hereto as **Exhibit 'A'** (the "Facility
Standards"). The Facility currently complies with the facility standards with respect to
sales. You agree that the Facility will continuously comply with the Facility Guide, as
may be amended from time to time, for a dealership of the relevant size. You understand
and acknowledge that the standards set forth in the Facility Guide are designed to

enhance brand recognition and to maximize the opportunities to be afforded to Dealer. You agree to maintain and enhance your dealership facilities in accordance with Jaguar's reasonable recommendations or as a result of increases in the volume of sales and service business conducted by Dealer.

4.   Exclusivity/Other Line-Makes.  The Facility will be dedicated exclusively to the sale and service of Jaguar products.  You must consult with Jaguar and obtain Jaguar's express written approval before agreeing to display, sell, service and/or provide parts for any line-make other than Jaguar in the Facility. As such, within the Facility, you will provide appropriate environmental separation for Jaguar and any other approved line make. Jaguar will not unreasonably withhold approval of a proposal to add other low volume high line brands to the Facility, provided, however, that it will not be deemed unreasonable for Jaguar to reject any such proposal that is inconsistent with Jaguar's Design and Capacity Guidelines. If such approval is granted, we will enter into a new Performance Agreement.

5.   Design/Relocation of Service Facility.  Upon relocation of Service & Parts to the Facility you will work with Jaguar to insure the capacity requirements are met and the renovation is consistent with Jaguar's brand image and the approach that will be reflected in the renovation.

6.   Corporate Identity Program.  Subject to applicable ordinances, you will satisfy the requirements of Jaguar's Corporate Identity Program (the "Program").  You will continuously maintain and display approved Jaguar signage during any period in which you are acting as an authorized Jaguar dealer pursuant to a Jaguar Dealer Agreement. You will remove any signage that does not conform to the Program

7.   Special Tools/Equipment.  In furtherance of your prospective Jaguar service obligations at the Centre, you agree to purchase, continue to maintain and/or update all of the tools listed in Jaguar's Required Tool Survey (the "Survey"), as may be amended from time to time.  The current version of the minimum special tools and equipment standards is attached hereto as **Exhibit 'C'.**  You agree that a Jaguar representative will complete the Survey for you on a regular basis to ensure your ongoing compliance with this obligation, which Jaguar regards as critical to the proper servicing of its vehicles.

8.   Sales and Service Staff.  You acknowledge and agree that maintaining a stable, experienced sales, service and parts staff is essential to the proper representation of Jaguar products.  You will employ in all managerial and technical positions the number of individuals required by the Jaguar Facilities and Personnel Guide, as may be amended from time to time.  Each such individual shall be experienced in the sale and/or servicing of luxury and/or Jaguar products or must be expeditiously trained in such sale and/or servicing.  You agree that all personnel engaged in your Jaguar operations must complete all applicable training courses offered by Jaguar.

9.   Wholesale line of credit/floorplan/capitalization.  By no later than August 1, 2008, you will provide to Jaguar (a) confirmation from your banking source of the existence of a wholesale line of credit, dedicated exclusively to the financing of Jaguar products; (b)

confirmation of working capital; and (iii) a statement from your banking sources that the franchise value as an asset (goodwill) has not been pledged or encumbered in any way as security for loans. You agree to remain in compliance with Jaguar's working capital requirements, as may be amended by Jaguar from time to time.

10. <u>Financial Statements</u>. You shall furnish to Jaguar, on or before the tenth (10th) day of each calendar month (or at such other intervals as Jaguar may from time to time establish), in electronic form or on such forms as Jaguar may require, and in accordance with such accounting procedures as Jaguar may reasonably establish, a financial statement completely and accurately reflecting the results of Dealer's Jaguar operations for the preceding month and calendar year-to-date. Dealer may include the financial results of its sales and/or service operations for Dealer's other vehicle brands, provided that Dealer conducts such operations in the same facility that houses Dealer's Jaguar operations and that such shared facility is authorized by Jaguar pursuant to paragraph 2 of this Agreement.

11. <u>Management</u>. Dennis Squitieri will serve as the Dealer Operators and will be responsible for the overall management and operational control under the Dealer Agreement, if executed. Angelo Renzulli will have day-to-day managerial authority for operating your dealership in accordance with the terms and conditions of the Dealer Agreement (hereinafter, the "GM"). You understand and agree that any GM must have substantial, successful retail automotive experience and must meet Jaguar's high standards for moral and ethical behavior. Jaguar will review the GM's performance against reasonable and objective standards established by Jaguar including, but not limited to, your customer satisfaction and market penetration results. You understand that in the event you fail to achieve the greater of district or national averages in these or other categories, Jaguar may, without prejudice to any other remedy that may be available, cause you to select another GM to be approved by Jaguar. You will notify Jaguar and obtain Jaguar's prior written approval of any proposed change to the GM, which approval will not be unreasonably withheld. You shall have the right to appoint an interim GM for a period not to exceed 90 days as a temporary replacement for any GM who is terminated for cause or who voluntarily resigns, in each case without the prior written approval of Jaguar. In the event that an interim GM is appointed, a permanent GM will be appointed with Jaguar's approval within 90 days after the appointment of the interim GM. In addition to meeting the criteria Jaguar customarily applies to new dealer candidates, any GM (except for an interim GM) will be employed by you for a sufficient time (a minimum of 3 years unless otherwise agreed to by Jaguar in writing) to ensure the adoption of consistent policies, the development of sound internal processes and the development and maintenance of ties to the local community. Any employment contract between you and the GM shall recite that it subject to the terms of this paragraph.

12. <u>Not Assignable</u>. This Agreement cannot be assigned, sold or transferred, in whole or in part, unless Jaguar, in its sole discretion, elects to approve such assignment after advance notice from you.

13. <u>Ownership Changes/Transfers</u>. Your ownership structure shall remain as described in **Exhibit 'D.'** The following restrictions apply in the event that, after the execution of a Dealer Agreement, you propose to (a) change your ownership or management; (b) sell all

or substantially all of the assets used in your Jaguar operations; or (c) transfer any rights or obligations under such Dealer Agreement (any of the foregoing referred to herein as a "Proposal"). You may not implement a Proposal absent Jaguar's express prior written approval. You will advise Jaguar in writing not less than sixty (60) days prior to the effective date of any Proposal and prior to entering into any binding contractual agreement for such Proposal. Jaguar retains a right of first refusal with respect to such a Proposal, as described more fully in **Exhibit 'E.'** Subject to and without limiting such right in any way, and subject to paragraph 13 hereof, Jaguar will not unreasonably withhold its approval of such a Proposal. You expressly recognize and acknowledge that the identity, reputation, financial resources, personal and business qualifications and experience and marketing philosophy of the owners and management of Jaguar's authorized dealers are of vital significance to Jaguar in its efforts to achieve and maintain a level of retail representation for Jaguar products unsurpassed in the luxury car industry. You further understand that in reviewing any Proposal, Jaguar applies a customer satisfaction "gateway" policy that evaluates a proposed purchaser's historic customer satisfaction index ("CSI") scores. For the avoidance of doubt, the partiers hereby acknowledge that, provided that Dennis Squitieri remains in control of MCJ, transfer of stock in MCJ to Dennis Squitieri's immediate family members, trusts for family members, or family limited liability companies shall be governed by N.J. Stat. Ann. § 56:10-7(d).

14.   Multiple Dealerships.  You understand that, from time to time, Jaguar defines "market areas" for various purposes, including, but not limited to, the determination of the nature and extent of its market representation. You further understand that Jaguar may, from time to time, recognize a Consolidated Market Area ("CMA") that permits common ownership of two separate Jaguar dealerships in contiguous AORs. For purposes of the following restrictions, a CMA is the equivalent of one "dealership." Unless otherwise agreed by Jaguar in writing, you agree that you will not seek or apply for a Jaguar dealership if, once owning such a dealership, you would own or control, directly or indirectly, (i) three Jaguar dealerships, or (ii) that number of Jaguar dealerships that would result in the combined total sales volume of your Jaguar dealerships in the immediately preceding calendar year to account for in excess of 5% of the total sales of new Jaguar vehicles sold in the United States in the immediately preceding calendar year (*see* **Exhibit 'F'**); provided, however, that in no event shall you seek or apply for a Jaguar dealership in any market area that would result in your ownership or control, directly or indirectly, of (i) more than one Jaguar dealership in those market areas having two or less Jaguar dealerships whose facilities are located within them, or (ii) more than 33% of the Jaguar dealerships in market areas having more than three Jaguar dealerships whose facilities are located within them. Should the above limitations be exceeded and, notwithstanding the above limitations, you seek Jaguar's approval to acquire an additional authorized dealership, Jaguar's refusal to approve such an acquisition shall be conclusively deemed to be a reasonable action by Jaguar, taken in good faith, for good cause and for sound business reasons, including, but not limited to, Jaguar's desire to promote intra- and inter-brand competition. You understand that, for purposes of these limitations on ownership of multiple Jaguar dealerships, any person or entity that, directly or indirectly, controls, is controlled by, or is under common control with, you, shall be treated as interchangeable with you.

15.   Non-Exclusive Area Of Responsibility.  You will be provided with a list of zip codes or other geographical designation that are currently expected to comprise Dealer's non-exclusive area of primary sales responsibility ("AOR").  You acknowledge that Jaguar may, from time to time, revise AORs, as Jaguar, in its reasonable judgment, deems appropriate.  You will be advised of any change through the issuance of an AOR designation letter or such other means of written or electronic communication as selected by Jaguar.  Jaguar may use your AOR for purposes of assessing your market penetration performance and for marketing, incentive, and other programs, as may be adopted or amended from time to time.  You understand, however, that your AOR does not constitute an exclusive sales or service area and that Jaguar reserves the right to determine from time to time, in its reasonable judgment, the number, location, and size of authorized dealerships necessary for proper sales and service representation of Jaguar products inside and outside the AOR.

16..   Advertising.  You agree that any advertising and marketing conducted while you are an authorized Jaguar dealer shall portray Jaguar products in a distinctive manner and shall not include any advertising for, marketing of, or other reference to any other line-make.

17.   Proposed logo/related items.  By no later than August 15, 2008, you will submit to Jaguar, for its review and approval, (a) exemplars or designs of any proposed dealership logo as well as any business cards, envelopes, repair orders, and any other document or item that may incorporate the proposed dealership logo; and (b) any domain registration, Internet site registration, or any other name to be used by you on the Internet or other on-line computer service in connection with its affiliation with Jaguar.  Jaguar will not unreasonably withhold approval as to such submissions.  The approved Jaguar color codes for purposes of the logo are Jaguar Green:  PMS #554; and Jaguar Gold:   PMS #873.

18.   Customer Satisfaction.  In the event you are authorized to conduct Jaguar operations, you will strive to achieve and consistently maintain customer satisfaction at or above the market or national average, whichever is higher.  The measure of customer satisfaction will be determined and defined by the Jaguar Customer Satisfaction Index (JCSI), which you hereby acknowledge to be reasonable, or by such other method for measuring customer satisfaction applicable to all dealers as determined by Jaguar.

19..   Used Jaguar Vehicles.  You agree that the retailing of used Jaguar vehicles is critical to the success of Jaguar and its authorized dealers.  To accomplish this, you agree that, in the event you are authorized to conduct Jaguar operations, you will:

- maintain a representative stock of late-model, used Jaguar vehicles to be retailed under the Jaguar Select Edition authorized pre-owned programs;
- participate actively in the Jaguar used vehicle auctions;
- maintain a qualified used car sales manager (may be General  Manager);
- establish and maintain at the Facility a separate and distinct area for the retailing of Jaguar used vehicles;
- participate in Jaguar used car training programs; and

- disclose to retail purchasers of pre-owned vehicles all information required by Jaguar policy and state law.

20.. <u>Computer Systems</u>.  You agree to install at the Facility a computer system(s) and equipment to meet Jaguar's requirements as outlined in **Exhibit 'G.'**

21.. <u>Presale Damage</u>.  Jaguar motor vehicles are assembled in the United Kingdom and transported by ship to the United States. During the course of transportation, some vehicles may be subjected to the elements or damage. Jaguar maintains repair facilities at the ports of entry as part of its manufacturing process.  Vehicles damaged during transportation will be assessed for the nature and amount of the damage. If any vehicle has sustained transportation damage at or below Jaguar's threshold for sale as a new vehicle, it may be repaired and sold to you. Jaguar will make disclosure of such damage or repairs as required by state law.  You agree to notify Jaguar of any unrepaired material damage in the unlikely event that Jaguar has failed to repair any material damage to the vehicle sustained during transportation from the United Kingdom until release to a ground carrier in the United States. You also agree to notify Jaguar of any patterns of material transportation damage you believe exist.  You will make disclosure to the retail customer of any pre-delivery damage. You will defend and indemnify Jaguar against any claims or lawsuits arising from or related to any allegation of your failure to make such disclosure.

22.. <u>Execution of Dealer Agreement</u>.  You understand that this Agreement is not a dealer agreement and does not authorize you to conduct Jaguar sales or service operations. Upon satisfactory completion of the terms and conditions of this Agreement, you will enter into with Jaguar the then-current standard form of Jaguar Dealer Agreement.  Your appointment as an authorized Jaguar dealer will not be effective until such Dealer Agreement is signed by you and an Executive Officer of Jaguar.  In the event of any failure by you to comply with the commitments contained herein, however, this Agreement shall, at Jaguar's option, become null and void and no Dealer Agreement shall be offered to you.

23. <u>Entire Agreement</u>.  This Agreement contains the entire agreement between the parties. You did not rely on any oral or written representations or statements, other than those expressly set forth herein, in entering into this Agreement.  The terms, provisions and conditions of this Agreement may not be changed, modified or amended in any manner except by an instrument in writing duly executed by an officer of the party to be charged.

24.. <u>Independent Decision</u>.  You represent and warrant to Jaguar that you have independently reviewed any projected financial commitments and potential for profits or losses that may result from entering into this Agreement, and that you are in a superior position as compared to Jaguar to know and understand your potential for such profit and/or loss. You have not relied on any statements by Jaguar or its representatives with respect to any potential for such profit or loss, now or in the future, that may result from your becoming an authorized Jaguar dealer.  You further acknowledge and agree that the relationship between Jaguar and you is, and at all times during the course of negotiations was, an arms-length commercial relationship, and that there was no "special relationship" or

"fiduciary relationship" between Jaguar and you with respect to this Agreement. You have entered into this Agreement voluntarily and without coercion, threats or intimidation of any kind whether from Jaguar, its officers or employees or otherwise. In entering into this Agreement, you were represented by counsel of your choice or, for reasons of your own, chose not to be so represented. You have not offered to any Jaguar employee, nor been solicited by any Jaguar employee for, any kick-back, bribe or any other payment, service, gift or gratuity of any kind as a condition to receiving this Agreement.

25.. <u>Expenses</u>. You will be solely responsible for any and all expenses incurred in connection with your fulfillment of the terms of this Agreement, including, but not limited to, all charges for services performed relating to the design and development of the Centre. Jaguar will not be liable to you for any such expenses.

26.. <u>Severability</u>. If any provision of this Agreement is found to be illegal, invalid or unenforceable under present or future laws effective during the term of this Agreement, such provision shall be fully severable, and this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision never comprised a part of this Agreement. The remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement.

27.. <u>Non-waiver</u>. Except as otherwise provided for in this Agreement, the failure of either party at any time to require performance by the other party of any provision hereof shall in no way affect the full right to require such performance at any time thereafter, nor shall the waiver of either party of a breach of any provision hereof constitute a waiver of any succeeding breach of the same or any other provision, nor constitute a waiver of the provision itself.

Please indicate your agreement to the all the foregoing terms and conditions by signing the duplicate originals of this Agreement and returning them to Virginia Slocum, 555 MacArthur Blvd., Mahwah NJ 07430, by no later than July 18, 2008, on which date, if we have not received such executed originals, our offer to enter into this Agreement will expire.

Sincerely yours,

Virginia Slocum
Franchise Development Manager

Page 8

UNDERSTOOD AND AGREED BY:

Dealer:

By: _____     Date: _____
Dennis Squitieri

Morris County Jaguar, L.L.C.
Dba Madison Jaguar


Jaguar Land Rover North America, LLC

By: _____     Date: _____
Lee Maas
Vice President, Franchise Operations

Exhibit 'E'

**Jaguar Right Of First Refusal to Purchase**

1) In the event that Company proposes a change in stock ownership or transfer by sale or otherwise of the Jaguar dealership business or its principal assets to any person or entity 'conditioned upon-- Jaguar's entering into a dealer agreement with such person or entity, Jaguar shall have a Right of First Refusal to Purchase the stock or assets on the same terms and conditions offered or agreed to with such person or entity, regardless of whether the proposed purchaser or transferee buyer is qualified to be a Company.

2) To exercise its Right of First Refusal, Jaguar must notify Company in writing within sixty (60) days of the date that Jaguar receives the completed proposal for the proposed sale or transfer and all information necessary for Jaguar to evaluate the proposal, including, but not limited, to, the buy-sell agreement(s) and completed dealer applications submitted by the proposed transferee(s).

3) Upon Jaguar's request, Company shall provide all documents relating to the transfer. Jaguar shall have the right to inspect the assets, including the real estate, if any, before exercising its Right of First Refusal.

4) Jaguar's Right of First Refusal under this section may be assigned to any third party (the "Assignee"). If there is an assignment, Jaguar will guarantee full payment of the purchase price by the Assignee. Before deciding whether to make such an assignment, Jaguar shall have the opportunity to discuss the terms of the buy/sell agreement with any potential Assignee and to provide a copy of the buy/sell agreement to such Assignee.

5) Jaguar's rights hereunder are binding on and enforceable against any successor in interest of the Company or purchaser of the Company's assets. When the proposed change of ownership involves a transfer by the Company solely to a member or members of his or her immediate family, or to a qualifying member of Company management, Jaguar's Right of First Refusal shall not apply. An "immediate family member" shall be the spouse, child, grandchild, spouse of a child or grandchild, brother, sister or parent of the Company owner. A "qualifying member of the Company's management" shall be an individual who has been employed by the Company in the dealership for at least four years and is otherwise qualified as a Company operator.

6) Jaguar agrees to pay the reasonable expenses, including attorney's fees which do not exceed the usual, customary and reasonable fees charged for similar work done for other clients, incurred by the proposed new owners and transferee in negotiating and implementing the contract for the proposed sale or transfer of the Company or Company's assets prior to Jaguar's Right of First Refusal.

7) Notwithstanding the foregoing, no payment of such expenses and attorney's fees shall be required if the Company has not submitted, or caused to be submitted, an accounting of such expenses within thirty days of Company's receipt of Jaguar's written request for such an accounting. Such accounting may be requested by Jaguar before the exercise by Jaguar of it Right of First Refusal.