# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BLUE SKY 1, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JAGUAR LAND ROVER NORTH AMERICA, LLC,<br><br>Defendant. | **Case No. 2:16-cv-00207-ES-JAD**<br><br>Motion Day:  March 7, 2016 |

## DEFENDANT'S BRIEF IN SUPPORT
## OF MOTION TO DISMISS

Brian D. Sullivan

FOX ROTHSCHILD LLP

75 Eisenhower Parkway, Suite 200

Roseland, NJ 07068

Tel:  (973) 994-7525

Email: bsullivan@foxrothschild.com

*Attorneys for Defendant Jaguar*
*Land Rover North America, LLC*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS ................................................................................2

    A.    The Dealer Agreement Between JLRNA And Madison Jaguar ..........3

    B.    Madison Jaguar Proposes A Sale ......................................................4

    C.    JLRNA Exercises Its ROFR................................................................5

    D.    Blue Sky Demands Payment From JLRNA Under Blue Sky's "Consultant Agreement" With Thomas Maoli ..................................6

    E.    Blue Sky's Claims ..............................................................................7

ARGUMENT......................................................................................................8

    I.    JLRNA DID NOT BREACH ANY CONTRACTUAL OBLIGATION................................................................................ 8

        A.    Blue Sky Was Not Entitled To A Fee Under The Consultant Agreement ......................................................8

        B.    The ROFR Does Not Require JLRNA To Pay Blue Sky.........10

        C.    The APA Did Not Create An Obligation To Pay Blue Sky .....13

    II.    JLRNA DID NOT "TORTIOUSLY INTERFERE"..........................17

CONCLUSION ................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Crivelli v. General Motors Corp.,
  215 F. 3d 386 (3rd Cir. 2000)..................................................................18

Pension Ben. Guar. Corp. v. White Consol. Ind.,
  998 F.2d 1192 (3d Cir. 1993).....................................................................2

Redfield v. Estate of Redfield,
  101 Nev. 24, 692 P.2d 1294 (1985)...........................................................9

Reef v. Bernstein,
  23 Mass. App. 599, 504 N.E.2d 374 (1987) ....................................10, 11

Rosado v. Ford Motor Co.,
  337 F.3d 291 (3d Cir. 2003) ....................................................................18

St. George's Dragons, L.P. v. Newport Real Estate Group, L.L.C.,
  407 N.J. Super. 464, 971 A.2d 1087 (App. Div. 2009)...............14, 15, 16, 17

Stein v. Chalet Susse Int'l,
  22 Mass. App. Ct., 492 N.E.2d 369 (1986) ...........................8, 11, 12

Tynan v. General Motors Corp.,
  248 N.J. Super. 654, 591 A.2d 1024 (N.J. App. Div. 1991), rev'd in part
  on other grounds, 127 N.J. 269, 604 A.2d 99 (N.J. 1992) .................17, 18

STATUTES

N.J. Stat. Ann. § 10-13.7......................................................................10

N.J. Stat. Ann. § 56:10-6........................................................................9

N.J. Stat. Ann. § 56:10-28.......................................................................4

Defendant Jaguar Land Rover North America, LLC ("**JLRNA**") respectfully submits this brief in support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint of plaintiff Blue Sky 1, LLC ("**Blue Sky**"), with prejudice, for failure to state a claim upon which relief can be granted.[1]

## PRELIMINARY STATEMENT

In 2015, Morris County Jaguar, LLC d/b/a Madison Jaguar ("**Madison Jaguar**") asked JLRNA to approve the proposed sale of its Jaguar franchise to Celebrity Jaguar, LLC ("**Celebrity**").   Pursuant to its pre-existing contractual rights under its Jaguar Dealer Agreement with Madison Jaguar (the "**Dealer Agreement**"), JLRNA decided not to approve a sale to Celebrity and instead exercised its right of first refusal.   JLRNA assigned its rights to Land Rover Parsippany, Inc. ("**LRP**"), which thereafter purchased the assets of Madison Jaguar.

In this case, Plaintiff Blue Sky seeks to hold JLRNA liable for a "Success Fee" that Celebrity's manager agreed to pay it in the event that Madison Jaguar was purchased by Celebrity.   Blue Sky asserts claims for (1) breach of contract and (2) tortious interference.

---

[1] The Complaint is Document ("**Doc.**") 1-2 filed in this action.   In this brief, citations to a page number in a filed document will be to the "PageID" in the top right hand corner of the document.   This brief will also cite to the Declaration of Lee Maas in Support of Motion to Dismiss, dated Feb. 1, 2016 ("**Maas Decl.**").

As shown below, JLRNA did not have any contractual relationship with, and owed no contractual duties to, Blue Sky.  Moreover, Blue Sky was not even entitled to a fee under its contract with Celebrity's manager.  Finally, JLRNA cannot be sued for "tortious interference" for exercising its own contractual right of first refusal.

## STATEMENT OF FACTS

On a motion to dismiss, the Court may consider the allegations in the Complaint, exhibits attached to the complaint, matters of public record, and any "undisputedly authentic document that a defendant attaches to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Ind., 998 F.2d 1192, 1196 (3d Cir. 1993).  Here, Blue Sky's claims are based, in substantial part, on the Dealer Agreement.  [Complaint, ¶¶ 17-29.] Blue Sky, however, has attached only an "excerpt" from the Dealer Agreement to its Complaint.  [Complaint, ¶ 17 and Ex. D.]  Accordingly, JLRNA is submitting a copy of the Dealer Agreement, authenticated by the Maas Declaration.[2]

---

[2] JLRNA notes that Exhibit D to the Complaint, which the Complaint alleges is an excerpt from the Dealer Agreement containing the right of first refusal provisions, does not appear to be pages from the actual Dealer Agreement between JLRNA and Madison Jaguar.  Nevertheless, the provisions that are relevant to Blue Sky's theory of recovery, and to this motion, are the same in both Exhibit D and in the Dealer Agreement attached to the Maas Declaration.  [*Compare* Complaint, Ex. D (Doc. 1-4 at 71-72) *with* Maas Decl., Ex. 4, Performance Agreement ¶ 13 and Ex. E thereto.]

2

A. **The Dealer Agreement Between JLRNA And Madison Jaguar**

JLRNA is the exclusive U.S. distributor of Jaguar motor vehicles, parts, and accessories ("**Jaguar Products**").   [Maas Decl., Ex. 2, Dealer Agreement "Preamble."]  JLRNA distributes Jaguar Products to authorized Jaguar dealers that have entered into a contractual relationship with JLRNA.

Madison Jaguar was an authorized Jaguar dealer located in Madison, New Jersey pursuant to the Dealer Agreement, which is dated July 30, 2008. [Complaint, ¶¶ 4, 7; Maas Decl., Ex. 1, p. 1.]  The Dealer Agreement refers to Madison Jaguar as "**Dealer**."  [Maas Decl., Ex. 1, p. 1.]

Pursuant to the Dealer Agreement, Madison Jaguar could not transfer its stock or assets without the prior written consent of JLRNA.  [Complaint, Ex. D, ¶ 12 (Dco. 1-4 at 71); Maas Decl., Ex. 2, Dealer Agreement ¶ 3; Ex. 3, Standard Provisions Art. 5; Ex. 4, Performance Agreement ¶ 13.]  In addition, if Madison Jaguar presented a transfer proposal to JLRNA, JLRNA had a right of first refusal ("**ROFR**") "to purchase the stock or assets of Dealer's dealership on the same terms and conditions offered by Dealer, or agreed to by Dealer with," the prospective buyer.  [Complaint, ¶ 17, quoting Ex. D., ¶ 12 (Doc. 1-4 at 71); Maas Decl., Ex. 4, Performance Agreement ¶ 13 and Ex. E thereto.]

If JLRNA exercises the ROFR, the Dealer Agreement permits JLRNA to "assign its ROFR to any third party selected by JLRNA in its discretion (the

3

'**Assignee**').'" [Complaint, ¶ 17, quoting Ex. D, ¶ 12(e) (Doc. 1-4 at 72); Maas Decl., Ex. 4, Performance Agreement, Ex. E, ¶ 4.]   The New Jersey Franchise Practices Act (the "**NJFPA**") effectively <u>requires</u> JLRNA to make such an assignment, because it prohibits a motor vehicle franchisor (such as JLRNA) from owning or operating a dealership.   <u>See</u> N.J. Stat. Ann. § 56:10-28.   The Dealer Agreement further provides that, "[i]f there is such an assignment, JLRNA will guarantee full payment of the purchase price by the Assignee." [Complaint, ¶ 17, quoting Ex. D, ¶ 12(e) (Doc. 1-4 at 72); Maas Decl., Ex. 4, Performance Agreement, Ex. E, ¶ 4.]

## B. <u>Madison Jaguar Proposes A Sale</u>

In or about January 2015, Madison Jaguar executed an Asset Purchase Agreement (the "**APA**") pursuant to which it agreed to sell the assets of its Jaguar dealership to Celebrity, subject to the approval of JLRNA.   [Complaint, ¶ 10 and Ex. B, Sec. 11(c) (Doc. 1-3 at 37).]   The APA defines Madison Jaguar as "**SELLER**" and Celebrity as "**BUYER**."   [Complaint, Ex. B, p. 1 (Doc. 1-2 at 25).]

The APA provided that the purchase price to be paid for the assets would be $1,500,000.   [Complaint, ¶ 12.]   The APA further provided that Celebrity would assume Madison Jaguar's obligations under its lease of the "Premises" where Madison Jaguar conducted its dealership operations, identified in the APA as 275

4

Main Street, Madison, New Jersey.  [Complaint, Ex. B, Sec. 6 and p. 31 (Doc. 1-2 at 30 and Doc. 1-3 at 55).]

Among the provisions of the APA was a "No Broker Clause," which provided as follows:

> **NO BROKER**.  Except for Blue Sky 1, LLC (Matthew J. Visconti, Jr.), the parties warrant and represent that neither have retained the services of a broker or salesperson in connection with the sale of the subject Premises and that there is no brokerage commission due in connection with this sale.  The parties further warrant and represent to the other that it was not shown the subject Premises as a result of any efforts of a real estate broker or salesperson.  Each party agrees to indemnify and hold harmless the other against and from any claims for any brokerage commissions and all costs, expenses, and liabilities in connection therewith, including, without limitation, attorneys' fees and expenses, arising out of any conversations or negotiations had by such party with any broker. BUYER shall be solely responsible for the fee owed Blue Sky 1, LLC, and such fee shall be paid at closing.

[Complaint, Ex. B, Sec. 23 (Doc. 1-3 at 42).]  The APA contains no other reference to Blue Sky and no other information concerning the "fee" referred to in the last sentence of the No Broker Clause.

### C. JLRNA Exercises Its ROFR

By letter dated May 7, 2015, JLRNA notified Madison Jaguar that JLRNA had decided to exercise its ROFR and assign the ROFR to LRP.  [Complaint, ¶¶ 16, 18 and Ex. C (Doc. 1-4 at 68).]  The letter stated that "JLRNA will guarantee

\\NY - 029018/000077 - 4680680 v1

[LRP's] payment and performance obligations to Dealer with respect to the ROFR and the purchase of Dealer's Jaguar assets which are the subject of the APA (the 'Assets')." [Complaint, ¶ 24, quoting Ex. C thereto.]

The letter also stated that, while JLRNA was "not obliged to otherwise respond to the proposed sale to Celebrity" in light of its exercise of the ROFR, "[t]o the extent such a response is deemed required" JLRNA declined to consent because of Celebrity's (1) unacceptable customer satisfaction performance and (2) failure to submit "a complete or acceptable facility proposal." [Complaint, Ex. C (Doc. 1-4 at 68-69).]

Pursuant to JLRNA's exercise of the ROFR, the assets of Madison Jaguar were sold to LRP in or about July 2015. [Complaint, ¶ 35.]

### D. Blue Sky Demands Payment From JLRNA Under Blue Sky's "Consultant Agreement" With Thomas Maoli

After the sale, plaintiff Blue Sky demanded that JLRNA pay a "success fee" pursuant to an agreement dated September 4, 2013, between Blue Sky and Thomas Maoli. [Complaint, ¶ 36; see id. ¶¶ 8-9 and Ex. A (Doc. 1-2 at 21).] Maoli is the manager of Celebrity. [See Complaint, Ex. B, p. 24 (Doc. 1-3 at 48).] JLRNA refused to tender any payment to Blue Sky. [Complaint, ¶ 36.]

The September 4, 2013 agreement, which the Complaint refers to as the Consultant Agreement, "set[s] forth the terms and conditions under which Blue Sky . . . agrees to serve Thomas Maoli and/or its [sic] other affiliated entities,

(collectively called '**Client**') as a consultant and the sole and exclusive intermediary to effect the acquisition of the business of Madison Jaguar . . . ." [Complaint, Ex. A (Doc. 1-2 at 21) (emphasis added).]   Of principal relevance here, the Consultant Agreement provides that (1) Client agrees to pay Blue Sky a "Success Fee" at the closing "[i]n the event of any purchase of Madison Jaguar, **by Client** . . . ."; and (2) "[t]he Success Fee shall be in the amount of ten percent (10%) of the Consideration paid by Client and received by Target Acquisitions in connection with the Purchase."  [Complaint, Ex. A, ¶ 5 (Doc. 1-2 at 22) (emphasis added).]

### E.  Blue Sky's Claims

The Complaint contains two "Counts."  In the First Count, Blue Sky alleges that the APA and the Dealer Agreement imposed a duty on JLRNA to pay the Success Fee provided for in the Consultant Agreement.  [Complaint, ¶¶ 39-48.]  In the Second Count, Blue Sky alleges that JLRNA tortiously interfered with Blue Sky's rights under the APA and/or the Consultant Agreement.  [Id. ¶¶ 52-58.]  As shown below, neither Count states a claim against JLRNA.

## ARGUMENT

## I.   JLRNA DID NOT BREACH ANY CONTRACTUAL OBLIGATION

In the First Count, Blue Sky alleges that JLRNA breached a contractual obligation to pay Blue Sky the Success Fee under the Consultant Agreement.  This claim fails as a matter of law for at least three independent reasons: (a) Blue Sky is not entitled to a Success Fee under the plain terms of the Consultant Agreement; (b) the ROFR provision in the Dealer Agreement obligates JLRNA to ensure that the selling Dealer (Madison Jaguar) receives the same consideration it would have received from the prospective buyer (Celebrity), not that third-parties such as Blue Sky be paid; and (c) Blue Sky's contention that the APA itself creates an obligation on the part of Celebrity (or any buyer who takes its place) to pay the Success Fee under the Consultant Agreement has no merit.

### A.   Blue Sky Was Not Entitled To A Fee Under The Consultant Agreement

The Complaint and its attached documents demonstrate that Blue Sky was not entitled to a Success Fee under the Consultant Agreement.  As the Complaint alleges, Madison Jaguar's assets were purchased by LRP.  [Complaint, ¶ 35.] Under the plain terms of the Consultant Agreement, Blue Sky was entitled to the Success Fee only upon the closing of the purchase of Madison Jaguar's assets "by Client" – i.e., Maoli and/or his affiliated entities.  Since the Client did not purchase Madison Jaguar's assets, Blue Sky was not owed a Success Fee.  Stein v. Chalet

Susse Int'l, 22 Mass. App. Ct. at 174, 178, 492 N.E.2d 369, 371 (1986) (where agreement between prospective buyer and brokers entitled brokers to commission if sale to prospective buyer was completed, brokers were not entitled to commission where ROFR was exercised); Redfield v. Estate of Redfield, 101 Nev. 24, 26-27, 692 P.2d 1294, 1296 (1985) (same).

Besides being correct as a matter of law, this result is not unfair to Blue Sky. Under the contract it negotiated with Maoli, Blue Sky accepted the risk that any purchase agreement it negotiated with Madison Jaguar on behalf of its Client might not result in a purchase by its Client. That included the risk that Maoli and/or any affiliated entity might not be accepted as a franchisee by JLRNA.

This risk was obviously well known to Blue Sky. Indeed, the APA – which Blue Sky says it negotiated [Complaint, ¶ 10] – acknowledges both JLRNA's right to turn down Celebrity as a franchisee and JLRNA's right of first refusal. [Complaint, Ex. B, Secs. 11(c), 26(s) (Doc. 1-3 at 37, 47).] Moreover, virtually every motor vehicle franchise agreement provides that the franchisor has the right to approve or disapprove a proposed transferee, and ROFR provisions are also very common. The NJFPA expressly recognizes both of these commonplace franchisor rights. The statute makes it unlawful for a franchisee to transfer a franchise without first obtaining the franchisor's approval. N.J. Stat. Ann. § 56:10-6. It also

\\NY - 029018/000077 - 4680680 v1

permits a motor vehicle franchisor to exercise a right of first refusal provided that it complies with the statute's requirements.  See N.J. Stat. Ann. § 10-13.7.

By agreeing with Maoli that it would be entitled to a Success Fee only in the event of a purchase of Madison Jaguar by Maoli or his affiliates, Blue Sky accepted the risk that any deal it negotiated for Maoli would not close and, accordingly, it would not receive any fee.  Blue Sky cannot now look to JLRNA to insure it against a risk it knowingly accepted under its contract.

## B. The ROFR Does Not Require JLRNA To Pay Blue Sky

Even if Blue Sky were entitled to the Success Fee under the Consultant Agreement (which it was not), JLRNA would have no contractual obligation to pay it.  JLRNA's contractual obligations arise out of the Dealer Agreement, a contract to which Blue Sky was neither a party nor a third-party beneficiary.

In the Dealer Agreement, JLRNA promises its Dealer – viz., Madison Jaguar – that if JLRNA exercises its ROFR, JLRNA will (i) purchase the Dealer's assets "on the same terms and conditions offered by Dealer, or agreed to by Dealer with, any other person or entity" and (ii) guarantee "full payment of the purchase price by the Assignee" to the Dealer.  Thus, JLRNA satisfies its contractual obligations under the ROFR if it causes its Dealer to receive the same consideration it would have received from the prospective purchaser.  See Reef v. Bernstein, 23 Mass. App. 599, 602-03, 504 N.E.2d 374, 376-77 (1987) (party exercising his ROFR

satisfies his obligations if seller receives the same compensation it was to receive from prospective purchaser; ROFR-holder not obligated to pay broker's commission).

In the Dealer Agreement, JLRNA does not undertake any obligations to third-party brokers such as Blue Sky.  Further, as observed by the Court in <u>Reef v. Bernstein</u>:

> The expectation of the parties to the instrument giving rise to the right of first refusal is that the services of a broker will not be needed and that no broker's commission will be payable. This expectation is the same whether the buyer or the seller under the third-party agreement is to pay the commission.

23 Mass. App. Ct. at 602, 504 N.E.2d at 376-77.

While JLRNA has not found a New Jersey case that is on point, the court in <u>Stein v. Chalet Susse Int'l, Inc.</u>, <u>supra</u>, rejected a claim identical to Blue Sky's. There, the buyer, seller, and the brokers were all parties to a purchase and sale agreement in which the "BUYER" – defined as Gerald Fineberg – agreed that he would be responsible for the brokers' commission.  22 Mass. App. Ct. at 176-77, 492 N.E.2d at 371-72.  The amount of the commission was agreed to in a separate contract between Fineberg and the brokers.   That agreement provided that $120,000 would be "payable in cash at the closing of the transaction in accordance with the [p]urchase and [s]ale agreement."  <u>Id.</u> at 177, 492 N.E.2d at 371.

After these agreements were signed, defendant CSI exercised a pre-existing right of first refusal.  Id.  CSI assigned the ROFR to two trustees, who closed on the transaction, and "[n]obody . . . paid the [brokers] a commission."  Id. at 178, 492 N.E.2d at 371.  The brokers then sued the seller, CSI, and the assignees.  The defendants' motions for summary judgment were granted.

On appeal, the brokers made the same argument that Blue Sky makes here – i.e., that the ROFR-holder should be liable because it "undertook to purchase the property 'on the same terms and conditions as [those] set forth in the . . . [p]urchase and [s]ale agreement.'"  Id. at 178, 492 N.E.2d at 371.  The Court rejected this argument.  It pointed out that the "BUYER" in the APA was defined as Fineberg.  Id. at 177, 492 N.E.2d at 371.  It held that CSI had no obligation to pay the brokers' fee because, among other things, "CSI was acting in its own right and behalf in exercising its antecedent right of first refusal; it was not acting in any sense as a designee of Fineberg."  Id. at 178, 492 N.E.2d at 371-72.

Here, the APA defined the "BUYER" as Celebrity.  [Complaint, Ex. B., p. 1 (Doc. 1-2 at 25).]  JLRNA was acting in its own right and behalf in exercising its pre-existing right of first refusal; it was not acting as a designee or assignee of Celebrity.  As in Stein, JLRNA, as ROFR-holder, had no obligation to pay any broker's fee allegedly owed by Celebrity.

### C.     The APA Did Not Create An Obligation To Pay Blue Sky

Not only was Blue Sky not entitled to a fee under the Consultant Agreement and JLRNA not obligated to pay any such fee under the Dealer Agreement, but the linchpin of Blue Sky's argument – that the No Broker Clause of the APA imposed an obligation on Celebrity to pay the Success Fee, which JLRNA assumed when it exercised the ROFR – has no merit.[3]  The No Broker Clause was a boilerplate provision which simply provided that, as between Madison Jaguar and Celebrity, Celebrity would be liable for Blue Sky's fee – whatever it may or may not be.

The APA's No Broker Clause did not create any obligation on the part of Celebrity to pay Blue Sky the Success Fee.  Any such obligation was created and governed by the pre-existing, separate Consultant Agreement between Celebrity and Blue Sky – an agreement that Celebrity and Blue Sky could have modified at any time without Madison Jaguar's participation or knowledge.  The purpose and effect of the No Broker Clause of the APA was to protect each of the parties to the

---

[3] More precisely, Blue Sky's allegation is that LRP had the obligation to pay the Success Fee, and that JLRNA is liable because it guaranteed LRP's performance (albeit to Madison Jaguar, not to Celebrity or Blue Sky).  [See Complaint, ¶¶ 19, 40-45.]  Blue Sky apparently attempts to explain its failure to sue LRP – who, under its own theory, is the primary obligor – by alleging, "[o]n information and belief, [that JLRNA] did not provide a copy of the APA to [LRP]."  [Complaint, ¶ 30.]  It is, of course, implausible that LRP – part of the Paul Miller Group, a large New Jersey dealership organization – would take an assignment of an APA without first obtaining and reading it.  Nevertheless, the Court may assume the truth of these implausible allegations without any change in the analysis or result in this case.

\\NY - 029018/000077 - 4680680 v1

APA from any claim that might be made by any broker with whom the other party consulted.

In the first sentence of the No Broker Clause, the parties "warrant and represent" to one another that, "[e]xcept for Blue Sky," neither party has "retained the services of a broker or salesperson in connection with the sale of the subject Premises and that there is no brokerage commission due on this sale."  [Complaint, Ex. B, Sec. 23 (Doc. 1-3 at 42).]  In the second sentence, each party warrants and represents "that it was not shown the subject Premises" as the result of efforts by a broker or salesperson.  [Id.]  In the third sentence, each party agrees to indemnify and hold harmless the other party from any claims "arising out of conversations or negotiations had by such party with any broker."  [Id.]

The final sentence – on which Blue Sky's entire breach of contract theory depends – states that "BUYER shall be solely responsible for the fee owed Blue Sky 1, LLC, and such fee shall be paid at closing." [Id. (emphasis added).]  The obvious purpose of the final sentence is to protect Madison Jaguar from any claim by Blue Sky, Celebrity's broker, just as the purpose of every other sentence of the No Broker Clause is to protect each party from claims by brokers with whom the other party may have discussed the deal.  Obtaining such protection is standard practice for sellers since the seller is normally responsible for brokerage fees unless the contract provides otherwise.  See St. George's Dragons, L.P. v. Newport

14

Real Estate Group, L.L.C., 407 N.J. Super. 464, 488, 971 A.2d 1087, 1101 (App. Div. 2009).

By providing that Celebrity will be "solely" responsible for the fee, the final sentence of the No Broker Clause merely states who, as between Celebrity and Madison Jaguar, is responsible for the fee; it does not purport, of its own force, to create or define any obligation.  It provides no information about the amount of the fee or how it will be calculated.  It does not refer to the Consultant Agreement or adopt or incorporate its terms.  While it requires Celebrity to pay the fee "at closing," that is for the evident purpose of protecting Madison Jaguar from later claims by Blue Sky that it hadn't been paid.

Moreover, to the extent the APA describes the "fee" at all, it does not accurately describe it.  The No Broker Clause says that Blue Sky's services were "in connection with the sale of subject Premises."  The APA, however, did not even involve a sale of the Premises, and the Success Fee in the Consultant Agreement is based on the sale of Madison Jaguar's dealership assets, not the Premises.  This lack of precision in drafting the No Broker Clause confirms that it "was standard boilerplate, designed to protect each party against claims by undisclosed brokers." St. George's, 407 N.J. Super. at 487, 971 A.2d at 1101.

In addition, to the extent that there is any ambiguity in the No Broker Clause, that ambiguity must be construed in favor of JLRNA as the holder of the

right of first refusal.  Id. at 483, 971 A.2d at 1098-99.  The court in St. George's adopted this rule because "the contract between the seller and the third-party offeror is structured by those parties with no input from the [ROFR]-holder."  Id. at 483, 971 A.2d at 1098-99.  In St. George's, the seller refused to honor the ROFR because the ROFR-holder refused to accept responsibility for a commission that would be owed to a broker with whom the holder previously dealt.  The seller argued that the ROFR-holder was liable for the commission based on a provision in seller's contract with the prospective purchaser "requiring that if either party dealt with a broker other than [the seller's broker], that party would be obligated to pay any commission due to that other broker."  Id. at 486, 971 A.2d at 1100.  The court held that this clause did not obligate the ROFR-holder to pay the other broker:

> First, it is far from clear that the "dealt with another broker" clause was intended as a "term" that [the ROFR-holder] had to accept to invoke the right of first refusal. As between [him] and [the seller], the clause is ambiguous and as such would be construed against [the seller], since [the ROFR-holder] had no part in drafting that clause.

Id. at 486, 971 A.2d at 1100.  The same analysis applies here.  It is far from clear that the No Broker Clause imposed any obligation that JLRNA had to assume to invoke its ROFR.  The APA says that the "BUYER" will pay the fee owed to Blue Sky, and the APA expressly defines the "BUYER" as Celebrity.  Moreover, as

discussed above, the APA provides no information concerning the nature, amount, or terms of the fee.

Finally, it is questionable whether Madison Jaguar and Celebrity <u>could</u> have imposed any such obligation on JLRNA in the APA, even if they had attempted to do so in unambiguous language.  <u>See id.</u> at 486, 971 A.2d at 1101 ("if [seller] and [prospective purchaser] had intentionally drafted the clause as a sort of 'poison pill' designed to prevent [the ROFR-holder] from invoking his right of first refusal, the clause might have been inconsistent with [seller's] obligation of good faith and fair dealing").  Because the APA does not impose any such obligation on JLRNA, however, the Court need not reach this question.

*      *      *      *

For each of the three independent reasons discussed above, the First Count fails to state a claim for breach of contract against JLRNA.

## II.    <u>JLRNA DID NOT "TORTIOUSLY INTERFERE"</u>

In the Second Count, Blue Sky alleges that JLRNA "tortiously interfered" with Blue Sky's rights under the APA and/or the Consultant Agreement.

It is well established, however, that a tortious interference claim will not lie against a franchisor for exercising its contractual and/or statutory right of disapproval or of first refusal with respect to a proposed transfer.  <u>Tynan v. General Motors Corp.</u>, 248 N.J. Super. 654, 671, 591 A.2d 1024, 1033 (N.J. App.

17

Div. 1991), <u>rev'd in part on other grounds</u>, 127 N.J. 269, 604 A.2d 99 (N.J. 1992);

<u>Crivelli v. General Motors Corp.</u>, 215 F. 3d 386, 395 (3rd Cir. 2000) (applying

Pennsylvania law but relying on <u>Tynan</u> and cases from other states); <u>Rosado v.</u>

<u>Ford Motor Co.</u>, 337 F.3d 291, 296 (3d Cir. 2003).

Moreover, as shown in Point I above, Blue Sky was not entitled to the

Success Fee under the terms of the Consultant Agreement or the APA.  Thus,

JLRNA could not have interfered with any such right.

## <u>CONCLUSION</u>

For the foregoing reasons, JLRNA respectfully submits that the Complaint

should be dismissed, with prejudice.

Dated: February 1, 2016

> _s/Brian D. Sullivan_
> Brian D. Sullivan
> FOX ROTHSCHILD LLP
> 75 Eisenhower Parkway, Suite 200
> Roseland, NJ 07068
> Tel:  (973) 994-7525
> Email: bsullivan@foxrothschild.com
>
> _Attorneys for Defendant Jaguar_
> _Land Rover North America, LLC_

18