**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

BLUE SKY 1, LLC,

Plaintiff,

v.

JAGUAR LAND ROVER NORTH AMERICA, LLC,

Defendant.

**Case No. 2:16-cv-00207-ES-JAD**

Motion Day: March 7, 2016

# DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

Brian D. Sullivan
FOX ROTHSCHILD LLP
75 Eisenhower Parkway, Suite 200
Roseland, NJ 07068
Tel: (973) 994-7525
Email: bsullivan@foxrothschild.com

*Attorneys for Defendant Jaguar Land Rover North America, LLC*

# TABLE OF CONTENTS

**Page**

I. THE CONTRACT LANGUAGE IS CONTROLLING .................................. 1

II. PLAINTIFF HAS NO CONTRACT-BASED CLAIM .................................. 2

A. Plaintiff Has No Contractual Right To A Fee .................................. 3

B. JLRNA Has No Contractual Obligation To Pay The Fee .................................. 4

III. PLAINTIFF HAS NO TORT CLAIM .................................. 10

IV. LEAVE TO REPLEAD SHOULD BE DENIED .................................. 13

CONCLUSION .................................. 14

## TABLE OF AUTHORITIES


Page(s)

**CASES**

ALA, Inc. v. CCAIR, Inc.,
29 F.3d 855 (3d Cir. 1994) ... 1

Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn,
410 N.J. Super. 510, 983 A.2d 604 (App. Div. 2009) ... 5

American Fin. Resources, Inc. v. Countrywide Home Loans Serv., LP,
No. 12-7141-ES, 2013 WL 6816394 (D.N.J. Dec. 23, 2013) ... 11

Anderson v. Draddy,
458 So. 2d 803 (Fla. App. 1984), review denied, 467 So. 2d 999 (Fla. 1985) ... 8

Bell Atl. Corp. v. Twombly,
550 U.S. 544, 127 S. Ct. 1955 (2007) ... 2

Click Corp. v. Redco Foods, Inc.,
424 F. Supp. 2d 753 (D.N.J. 2006) ... 2

Coldwell Banker Phyllis Rubin Real Estate v. Romano,
422 Pa. Super. 319, 619 A.2d 376 (1992) ... 3

Conley v. Gibson,
355 U.S. 41 (1957) ... 2

Cook v. Little Caesar Enterprises,
210 F.3d 653 (6th Cir. 2000) ... 13

Crivelli v. General Motors Corp.,
215 F.3d 386 (3d Cir. 2000) ... 12

Dalvis v. Coz,
32 Mass. App. 736, 594 N.E.2d 890 (1992) ... 4

Fallenius v. Walker,
787 P.2d 203 (Colo. App. 1989) ... 4

Fresno Motors, LLC v. Mercedes-Benz USA, LLC,
771 F.3d 1119 (9th Cir. 2014)....................................................................13

Furla Studios, Inc. v. Gillen,
133 Ill. App. 2d 620, 273 N.E.2d 220 (1971) ....................................................8

Hartmann v. Windsor Hotel,
132 W. Va. 307, 52 S.E. 2d 48 (1949) ..............................................................9

Hofman v. Time Warner Cable Inc.,
No. 12-00978-ES, 2013 WL 2460121 (D.N.J. June 6, 2013...............................2

Lehr v. Baron's of Surfside,
550 So.2d 74 (Fla. App. 1989) ..........................................................................3

Nasyrova v. Immunomedics, Inc.,
No. 14-1269-SRC, 2015 WL 4388310 (D.N.J. July 15, 2015) ...........................1

Priority Auto Group, Inc. v. Ford Motor Co.,
757 F.3d 137 (4th Cir. 2014)............................................................................13

Real Estate Co. v. Cavazza,
174 Pa. Super. 19, 98 A. 2d 486 (1953) ............................................................9

Reef v. Bernstein
23 Mass. App. 599, 504 N.E.2d (1987)..............................................................8

Shane v. Fauver,
213 F.3d 113 (3d Cir. 2000).............................................................................14

Simmons v. Plummer,
120 N.M. 481, 902 P.2d 1084 (1995)..............................................................3, 9

St. George's Dragons, L.P. v. Newport Real Estate Group, L.L.C.,
407 N.J. Super. 464, 971 A.2d 1087 (App. Div. 2009)...................................7, 8

Stein v. Chalet Susse Int'l Inc.,
22 Mass. App. Ct. 174, 492 N.E.2d 369 (1986).............................................6, 7

Tractor & Farm Supply, Inc. v. Ford New Holland, Inc.,
898 F. Supp. 1198 (W.D. Ky. 1995) ................................................................13

Trico Equip. Inc. v. Manor,
No. 08-5561-RBK-KMW, 2011 WL 705703 (Feb. 22, 2011) .......................... 11

Tynan v. General Motors Corp.,
248 N.J. Super. 654, 591 A.2d 1024 (App. Div. 1991), rev'd in part on other grounds, 127 N.J. 269 (1992) .......................... 12

VIP Truck Center, LLC v. Volvo Trucks North America,
No. 15-cv-12381, 2015 WL 7351998 (E.D. Mich. Nov. 20, 2015) .......................... 10

Yorkridge Service Corp. v. Baring,
38 Md. App. 624, 382 A.2d 343 (1978) .......................... 8

**STATUTES**

N.J.S.A. 2A:15-2 .......................... 2

N.J.S.A. 56:10-13.7 .......................... 10

Defendant Jaguar Land Rover North America, LLC ("**JLRNA**") respectfully submits this reply brief in further support of its motion to dismiss the Complaint with prejudice. Abbreviated terms defined in JLRNA's opening brief ("**Def. Br.**") are used herein.

In its opposition brief ("**Pl. Br.**"), Blue Sky fails to respond to JLRNA's lead argument: that Blue Sky was not entitled to the Success Fee under the plain terms of its Consultant Agreement because Madison Jaguar's assets were not purchased by Blue Sky's "Client." Because Blue Sky was not entitled to the Success Fee, all of its arguments are unavailing. They are also unmeritorious in their own right.

## I. THE CONTRACT LANGUAGE IS CONTROLLING

Blue Sky does not take issue with JLRNA's position that, on this Rule 12(b)(6) motion, the Court can consider the documents attached to the Complaint as well as the Dealer Agreement. Further, Blue Sky does not dispute (i) the authenticity of the copy of the Dealer Agreement submitted by JLRNA on this motion, or (ii) that its relevant ROFR provisions are the same as those in Exhibit D to the Complaint. [Compare Def. Br. at 2 & n.2 with Pl. Br., passim.]

"Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 n.8 (3d Cir. 1994); see, e.g., Nasyrova v. Immunomedics, Inc., No. 14-1269-SRC, 2015 WL 4388310, at

\\NY - 029018/000077 - 4717759 v1

*3 (D.N.J. July 15, 2015) (rejecting plaintiffs' interpretation of contract annexed to complaint). "Contract interpretation is a matter of law that is properly considered on a motion to dismiss." Hofman v. Time Warner Cable Inc., No. 12-00978-ES, 2013 WL 2460121, at *7 (D.N.J. June 6, 2013) (applying New Jersey contract law, court grants Rule 12(b)(6) dismissal); see also Click Corp. v. Redco Foods, Inc., 424 F. Supp. 2d 753, 759 (D.N.J. 2006).[1]

As shown in JLRNA's opening brief and as further shown below, Blue Sky's claims are inconsistent with the language of the governing contracts and with applicable law.

## II. PLAINTIFF HAS NO CONTRACT-BASED CLAIM

Blue Sky says that it "is not alleging a breach of contract against JLRNA" but instead "is asserting its rights under N.J.S.A. 2A:15-2 to effectuate the payment of the Success Fee." [Pl. Mem. at 3.] This assertion makes little sense. In the First Count, JLRNA's liability is based on its alleged contractual obligations under the ROFR and APA, and Blue Sky demands (among other things) "an Order requiring [JLRNA] to pay the success fee that is [allegedly] owed and due to Blue Sky." [Complaint, p. 10.] Thus, Blue Sky seeks damages for breach of contract.

---

[1] JLRNA notes that Blue Sky begins its legal argument by restating the test from Conley v. Gibson, 355 U.S. 41 (1957), that dismissal "should only be granted when it appears beyond doubt that the plaintiff can state no set of facts which would permit the relief requested in the complaint." [Pl. Br. at 1.] This test was expressly abrogated by the Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562-63, 127 S. Ct. 1955, 1969 (2007).

If, as it says, "Blue Sky is not alleging a breach of contract against JLRNA," then the First Count should be dismissed. JLRNA can be liable to pay Blue Sky's claimed fee only if it has committed a breach of the ROFR and/or the APA. That said, JLRNA will address Plaintiff's contract-based claim.

**A. Plaintiff Has No Contractual Right To A Fee**

Blue Sky does not even attempt to respond to JLRNA's point that, under the plain terms of the Consultant Agreement, Blue Sky was not entitled to the Success Fee because Madison Jaguar was not purchased by its "Client," expressly defined as Maoli or a Maoli affiliate. [Compare Def. Br. at 8-9 with Pl. Br., passim.]

In addition to the two out-of-state cases JLRNA previously cited to support this point, one of Blue Sky's own authorities[2] cites numerous additional cases denying recovery to a broker where the brokerage contract conditioned the right to a commission on a sale to specified purchasers and the sale was made instead to an ROFR-holder. See Lehr v. Baron's of Surfside, 550 So.2d 74, 75 (Fla. App. 1989) (where brokerage agreement provided for commission if purchase was "consummated with [broker's] prospective purchaser," broker was not entitled to commission when ROFR was exercised); Coldwell Banker Phyllis Rubin Real Estate v. Romano, 422 Pa. Super. 319, 330, 619 A.2d 376 (1992) ("Where the payment of a broker's commission is conditioned upon the occurrence of a certain

[2] Simmons v. Plummer, 120 N.M. 481, 902 P.2d 1084, 1087-88 (1995), cited in Pl. Br. at 6.

event, and the condition is not met, no commission is earned."); Fallenius v. Walker, 787 P.2d 203, 205 (Colo. App. 1989) ("Written contracts that are complete and free from ambiguity . . . will be enforced according to their plain language."); Dalvis v. Coz, 32 Mass. App. 736, 594 N.E.2d 890 (1992).

This point is a matter of simple, straightforward contract law. The Consultant Agreement is unambiguous as to the condition for the Success Fee: the closing of a purchase by Maoli or his affiliate. Since no such closing occurred, Blue Sky is not entitled to the Success Fee.

**B. JLRNA Has No Contractual Obligation To Pay The Fee**

Blue Sky argues that JLRNA was obligated to pay the Success Fee because (1) the ROFR required that the purchase be made "on the same terms and conditions" as the APA and (2) the APA "incorporated [the Consultant Agreement] by reference." [Pl. Mem. at 3.] JLRNA, however, had no such obligation under the ROFR, the APA, or the combination thereof.

In the ROFR, JLRNA agrees: (i) "to purchase the . . . assets of the Dealer's dealership on the same terms and conditions offered by Dealer to, or agreed to by Dealer with," the prospective purchaser; and (ii) if it assigns its rights, to "guarantee full payment of the purchase price by its assignee." [Complaint, ¶ 17, quoting Ex. D, ¶ 12(a), (e).] Thus, JLRNA promises the selling Dealer that it will perform, or guarantee performance of, the prospective purchaser's obligations to

the selling Dealer. The ROFR does not obligate JRLNA to perform Celebrity's obligations to Blue Sky (if any).

Nor did the APA create any such obligation. The No Broker Clause merely provided that Celebrity would be responsible for its pre-existing obligation (whatever it was) to Blue Sky. Contrary to Blue Sky's new assertion, the Consultant Agreement was not "incorporated by reference" in the APA.

In New Jersey, as elsewhere, "for there to be a proper and enforceable incorporation by reference of a separate document, [1] the document to be incorporated must be described in such terms that its identity may be ascertained beyond doubt and [2] the party to be bound by the terms must have had 'knowledge of and assented to the incorporated terms.'" Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 533, 983 A.2d 604, 617 (App. Div. 2009) (where retainer agreement did not provide name, date, or publication number of firm's "Master Retainer," it "fail[ed] the first prong" of test for incorporation by reference, notwithstanding agreement's provision that client would be bonded by firm's "standard billing practices and firm policies").

The Consultant Agreement also "fails the first prong" of the Alpert test. It was not attached in the APA; it was not referred to in the APA; and its terms and conditions were not set forth in the APA. In addition, Blue Sky does not dispute JLRNA's contention that Blue Sky and Maoli could have amended the terms of the

\\NY - 029018/000077 - 4717759 v1

Consultant Agreement at any time without Madison Jaguar's participation or knowledge. [Compare Def. Br. at 13 with Pl. Br., passim.][3]

Moreover, even if the APA had incorporated the Consultant Agreement by reference, the Consultant Agreement still says the Success Fee is owed only if Maoli or his affiliate closes on the purchase. Blue Sky is arguing (in effect) that the APA also amended the terms of the Consultant Agreement from "Maoli and/or his affiliated entities must pay Blue Sky the Success Fee if they close on the purchase of Madison Jaguar" to "any person who buys Madison Jaguar must pay Blue Sky the Success Fee." The Consultant Agreement, however, cannot be amended except in a writing signed by Maoli and Blue Sky. [Complaint, Ex. A., ¶ 12.] Blue Sky is not a signatory to the APA. And there is no language in the No Broker Clause that effects such a change in the Consultant Agreement.

Nor does the combined effect of the ROFR and APA obligate JLRNA to pay the Success Fee. Blue Sky concedes that Stein v. Chalet Susse Int'l Inc., 22 Mass. App. Ct. 174, 492 N.E.2d 369 (1986), is directly on point and directly contrary to

---

[3] Plaintiff's "incorporation by reference" contention is also contradicted by the merger clause of the APA, which provides: "This Agreement and all related documents executed currently herewith represent the complete understandings between the parties and their respective legal counsel, and supersede all previous negotiations or representations as to all matters whether described in this Agreement or not." [Complaint, Ex. B, ¶ 26(d) (emphasis added).] The Consultant Agreement was not "executed currently" with the APA. [See Complaint, ¶ 8 and Ex. A. (Consultant Agreement executed in September 2013); Complaint, ¶ 10 and Ex. B (APA executed in January 2015).

Plaintiff's position. [Pl. Mem. at 4.] Blue Sky argues, however, that Stein is inconsistent with New Jersey law as reflected in St. George's Dragons, L.P. v. Newport Real Estate Group, L.L.C., 407 N.J. Super. 464, 971 A.2d 1087 (App. Div. 2009). In fact, St. George's strongly supports JLRNA's position.

Like this case, St. George's involved a claim that the ROFR-holder was liable for a broker's fee based on language in the purchase agreement between the seller and prospective buyer. There, the seller (rather than the broker) argued (as Blue Sky argues here) that the ROFR-holder was liable for the broker's fee because (i) the purchase agreement made the buyer liable for any broker's fee other than that of the seller's broker and (ii) the ROFR required the ROFR-holder to purchase at the same price and terms as the purchase agreement. The Appellate Division held that the ROFR-holder was not liable to pay the broker's fee and was obligated only to pay the seller the purchase price set forth in the purchase agreement. 407 N.J. Super. at 468-70, 971 A. 2d at 1090-91. The Court also ruled that: (i) any ambiguity in the purchase agreement had to be construed in favor of the ROFR-holder, id. at 483, 971 A.2d at 1098-99; (ii) it was not clear that the brokerage provision was a "term that the ROFR-holder had to accept to invoke the [ROFR]," id. at 486, 971 A.2d at 1100; and (iii) the brokerage provision "was standard boilerplate, designed to protect each party against claims by undisclosed brokers," id. at 487, 971 A.2d at 1100.

Thus, both the holding and reasoning of St. George's are consistent with JLRNA's position and inconsistent with Blue Sky's. St. George's holds that the ROFR-holder satisfies its obligation if the seller receives the same consideration as the prospective buyer agreed to pay it. Here, there is no dispute that Madison Jaguar received the same consideration as Celebrity agreed to pay it.[4]

Plaintiff cites six cases for the proposition that "[t]here are additional out of state authorities supporting plaintiff's right to a commission upon the exercise of a right of first refusal." [Pl. Br. at 5.] Plaintiff's description of the cases is inaccurate, and none of them support Plaintiff's position.

In three of the six cases cited by Plaintiff, the broker was not entitled to a commission and, as a result, the ROFR-holder tried to reduce the purchase price set forth in the purchase agreement by the amount of the commission. Anderson v. Draddy, 458 So. 2d 803, 804 (Fla. App. 1984) ("no commission was owed to the brokers"), review denied, 467 So. 2d 999 (Fla. 1985); Furla Studios, Inc. v. Gillen, 133 Ill. App. 2d 620, 625-26, 273 N.E.2d 220 (1971) (rejecting ROFR-holder's argument that he could reduce purchase price from $71,000 to $66,740 because seller would not have to pay broker's commission); Yorkridge Service Corp. v.

[4] Blue Sky claims that Reef v. Bernstein 23 Mass. App. 599, 504 N.E.2d (1987), is also inconsistent with St. George's. To the contrary, both cases hold that the ROFR-holder satisfies its obligation if the seller receives the same consideration that the prospective buyer agreed to pay it. Indeed, St. George's cites Reef in support of its ruling. 407 N.J. Super. at 485, 486, 971 A.2d at 1100, 1101.

Baring, 38 Md. App. 624, 626, 382 A.2d 343 (1978) (ROFR-holder "purported to reduce the purchase price by $11,200, the amount equal to the savings the [seller] would realize on the real estate commission by virtue of the sale to the [ROFR-holder] rather than to [the prospective purchaser]"). These cases are inapposite; here, Madison Jaguar was paid the full purchase price set forth in the APA.

In the other three cases Plaintiff cites, brokers sued sellers who, unlike the defendants in the cases cited in Section II.A. above, were obligated by their own agreements with their brokers to pay a commission regardless of whether the sale was to the prospective purchaser or the ROFR-holder.[5] These cases are also inapposite: here, Blue Sky (1) agreed it would receive a fee only if Maoli or his affiliate closed on the sale of Madison Jaguar and (2) is attempting to fasten liability on the ROFR-holder rather than a party with whom it had any agreement.

Notably, Blue Sky does not cite a single case in which a ROFR-holder was held liable for a commission, much less for a commission over and above the purchase price set forth in the purchase agreement.

* * * *

Both JLRNA's and Blue Sky's authorities make the obvious point that the liability of the parties depends on the language of the contracts they sign. Here,

---

[5] Simmons v. Plummer, 120 N.M. 481, 902 A.2d 1084 (1995); Real Estate Co. v. Cavazza, 174 Pa. Super. 19, 98 A. 2d 486 (1953); Hartmann v. Windsor Hotel, 132 W. Va. 307, 52 S.E. 2d 48 (1949).

Blue Sky signed a Consultant Agreement stating that it would earn the Success Fee only if its Client closed on the purchase on the sale of Madison Jaguar. Since no such closing occurred, Blue Sky is not entitled to the Success Fee.[6]

## III. PLAINTIFF HAS NO TORT CLAIM

Blue Sky says that its tortious interference claim is not based on JLRNA's exercise of its ROFR but on its "removal of the commission fee provision from the obligation of [LRP]." [Pl. Br. at 8.] This "clarification," however, does not provide the basis for a viable tort claim. The source of JLRNA's alleged obligation not to "remove the commission fee" is, according to Blue Sky's own argument, JLRNA's contractual obligation under the ROFR to purchase the dealership's assets "on the same terms and conditions" as in the APA. [See Pl. Br. at 8-11 (quoting from the paragraphs of the Complaint describing the ROFR and the APA as the basis of JLRNA's alleged obligation).

Thus, Blue Sky's tortious interference claim should be dismissed because "it is a mere restatement of its breach of contract claim, and it is simply 'no tort to breach a contract.'" VIP Truck Center, LLC v. Volvo Trucks North America, No.

[6] Blue Sky points out that N.J.S.A. 56:10-13.7 requires a franchisor exercising a ROFR to reimburse the "acquiring transferee" – here, Celebrity – for its expenses incurred in negotiating and pursuing the acquisition of the franchise. [Pl. Br. at 5.] This point, however, merely confirms that Celebrity had no obligation to pay Blue Sky the Success Fee; otherwise, Celebrity would surely have demanded the fee from JLRNA as part of its expenses and thereafter paid the fee over to Blue Sky. In any event, Blue Sky was not the acquiring transferee and thus has no standing to sue under N.J.S.A. 56:10-13.7.

15-cv-12381, 2015 WL 7351998, at *2 (E.D. Mich. Nov. 20, 2015) (Rule 12(b)(6) dismissal of tortious interference claim), quoting Palmer v. Nationwide Mutual Ins. Co., 945 F.2d 1371, 1375 (6th Cir. 1991). Moreover, under the "economic loss doctrine" as applied in New Jersey, a tort remedy does not arise from a contractual relationship unless the allegedly breaching party owes an independent duty imposed by law. American Fin. Resources, Inc. v. Countrywide Home Loans Serv., LP, No. 12-7141-ES, 2013 WL 6816394, at *6 (D.N.J. Dec. 23, 2013); see, e.g., Trico Equip. Inc. v. Manor, No. 08-5561-RBK-KMW, 2011 WL 705703 (Feb. 22, 2011) (economic loss doctrine bars tortious interference claim based on allegations that former employee breached contractual obligation not to disclose trade secrets and confidential information). Here, JLRNA owed no duty with respect to its exercise of the ROFR that is independent of its duties under the Dealer Agreement.

Blue Sky claims that the three tortious interference cases cited in JLRNA's opening brief are inapposite because (1) they were brought by the proposed purchasers and (2) the "underlying theory" of the cases was that "'prospective franchisees,' who have not yet been granted a franchise, do not have standing to allege a claim relative to a 'prospective or contract interest[] in a franchise' because they are not among the class of 'existing franchisees' who [sic] the legislature 'intended to be protect' [sic] with the New Jersey Franchise Practices

Act." [Pl. Br. at vii; see id. at 8.] Once again, Blue Sky mischaracterizes the case law.

For example, Crivelli v. General Motors Corp., 215 F.3d 386 (3d Cir. 2000), had nothing to do with standing or the New Jersey statute. In Crivelli, the Third Circuit held, first, that a franchisor's exercise of its contractual ROFR did not violate the Pennsylvania Board of Vehicles Act ("PBVA"). Id. at 389-94. Separately holding that the Plaintiff's tortious interference claim "should also have been dismissed," id. at 396, the Court applied the rules for determining whether an interference is "improper" under the Restatement (Second) of Torts. Id. at 394-95. The Court concluded that the interference was not improper because the franchisor was exercising its own contractual rights. Id. at 395-96.

In support of its ruling, Crivelli cited (among other authorities) Tynan v. General Motors Corp., 248 N.J. Super. 654, 591 A.2d 1024 (App. Div. 1991), rev'd in part on other grounds, 127 N.J. 269 (1992), for the principle that "a company's exercise of a right of first refusal cannot ordinarily give rise to a claim of intentional interference with a contract." Crivelli, 215 F.3d at 395; see Tynan, N.J. Super. at 671 ("By exercising its own rights, [the franchisor] cannot be said to have interfered with the rights of a third party.")

Crivelli and Tynan cited, and are supported by, a large body of case law holding that where, as here, a franchisor's alleged "interference" is the exercise of

its own contractual rights – such as its right to disapprove a proposed transfer of the franchise or to exercise its ROFR – its liability depends on whether it acted within its contractual rights. See e.g., Cook v. Little Caesar Enterprises, 210 F.3d 653, 659-60 (6th Cir. 2000) (no tortious interference claim where franchisor exercises its contractual right to disapprove a proposed transfer); Priority Auto Group, Inc. v. Ford Motor Co., 757 F.3d 137, 143-44 (4th Cir. 2014) (ROFR; affirming dismissal on pleadings); Fresno Motors, LLC v. Mercedes-Benz USA, LLC, 771 F.3d 1119, 1127-30 (9th Cir. 2014) (ROFR; affirming pre-answer summary judgment dismissal); cf. Tractor & Farm Supply, Inc. v. Ford New Holland, Inc., 898 F. Supp. 1198, 1207 (W.D. Ky. 1995) (rejecting claim that franchisor tortiously interfered with franchisees' contractual relationships with its customers by improperly terminating franchise agreement; claim "sound[s] in contract, not tort").

Accordingly, the tortious interference claim is not viable and should be dismissed.

## IV. LEAVE TO REPLEAD SHOULD BE DENIED

Blue Sky requests leave to replead, pointing out (among other things) that this action was commenced in state court. [Pl. Br. at 11 n. 6.] Plaintiff's problem, however, is not a mere failure to comply with federal pleading standards; the problem is that, as a matter of law, Blue Sky had no contractual right to the

Success Fee and JLRNA had no contractual duty to pay it. Accordingly, leave to replead should be denied as futile. See Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.").

## CONCLUSION

For the foregoing reasons, and the reasons stated in JLRNA's opening brief, JLRNA respectfully submits that the Complaint should be dismissed, with prejudice.

Dated: February 29, 2016

Respectfully submitted,

*/s/ Brian D. Sullivan*

Brian D. Sullivan
FOX ROTHSCHILD LLP
75 Eisenhower Parkway, Suite 200
Roseland, NJ 07068
Tel: (973) 994-7525
Email: bsullivan@foxrothschild.com

*Attorneys for Defendant Jaguar Land Rover North America, LLC*