<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **BLUE SKY 1, LLC,** : | |
| : | |
| **Plaintiff,** : | **Civil No. 16-207 (ES) (SCM)** |
| : | |
| **v.** : | <u>**OPINION**</u> |
| : | |
| **JAGUAR LAND ROVER NORTH** : | |
| **AMERICA, LLC,** : | |
| : | |
| **Defendant.** : | |

SALAS, DISTRICT JUDGE

## I.  INTRODUCTION

Pending before the Court is a Motion to Dismiss filed by Defendant Jaguar Land Rover North America, LLC ("Jaguar").  (D.E. No. 5).  Plaintiff Blue Sky 1, LLC ("Blue Sky") filed opposition, (D.E. No. 7), and Jaguar filed a reply, (D.E. No. 8).  The Court decides Jaguar's Motion without oral argument, *see* Fed. R. Civ. P. 78(b), and, for the following reasons, GRANTS Jaguar's Motion.

## II.  BACKGROUND

### A.  Facts

In 2013, Thomas Maoli sought to purchase the assets of Morris County Jaguar, LLC, d/b/a Madison Jaguar ("Madison"), which was a franchised dealership of Jaguar, a company that manufactures and sells motor vehicles.  (*See* D.E. No. 1-2, ECF pp. 3-14, Complaint ("Compl.") ¶¶ 8-10).  Madison sold and serviced Jaguar's manufactured motor vehicles.  (*Id.* ¶ 7).

On or about September 4 or 5, 2013, Maoli reached an agreement with Blue Sky (the "Consultant Agreement"), wherein Blue Sky would help to effect the sale of Madison's assets to Maoli and/or his affiliated entities. (*See id.* ¶ 8; *see also* D.E. No. 1-2, ECF pp. 16-18, Ex. A to Compl., Letter to Thomas Maoli from Matthew J. Visconti ("Consultant Agreement")).[1] The Consultant Agreement provides that its "purpose . . . is to set forth the terms and conditions under which Blue Sky 1, LLC . . . agrees to serve Thomas Maoli and/or its [sic] other affiliated entities (collectively called 'Client') as a consultant and the sole and exclusive intermediary to effect the acquisition of the business of Madison Jaguar, Madison, NJ." (Consultant Agreement at 1, D.E. No. 1-2, ECF p. 16). Further, the Consultant Agreement provides that Blue Sky would provide its Client the following "Services": "Blue Sky 1 shall use its best efforts to introduce Target Acquisitions to Client, to advise on deal structure, to assist in the negotiation of the acquisitions and the performance of due diligence, and to assist in the closing of the acquisitions." (*Id.* ¶ 3).

And, another paragraph of the Consultant Agreement states that Maoli or his affiliated entity—*i.e.* the Client—would pay Blue Sky a "Success Fee" if Maoli or his affiliated entity purchased Madison. (*See id.* ¶ 5). That provision states, in full, as follows:

> **Success Fee.** In the event of any purchase of **Madison Jaguar,** by Client during the term of this Agreement, or within twelve months following termination of this Agreement, Client agrees to pay Blue Sky 1 at the closing of such Purchase a fee ("Success Fee") based upon the total consideration to be paid by Client and received directly or indirectly by Target Acquisitions as a result of the Purchase, including but not limited to, cash, cash equivalents, promissory notes, liabilities assumed by the Client, business assets to be retained by Target Acquisitions (in the form of cash, accounts receivable, inventory (not on parts & new or used cars) or equipment, purchase price allocated to employment agreements, non-competition agreements, consulting agreements, management agreements and capital stock or any other securities received in exchange for Target Acquisitions business, assets or any portion thereof ("Consideration"). The Success Fee shall be in amount equal to ten percent (10%) of the Consideration paid by Client and received by Target

---

[1] The Complaint contains several exhibits that span over three subentries under Docket Entry 1. For ease of reference to those exhibits, the Court will cite to both the Docket Entry number and the ECF-generated page number appearing in the header of the documents.

> Acquisitions in connection with the Purchase. The Success Fee as calculated above shall be paid in full at closing in cash, by certified check or official bank check, or by wire transfer.

(*Id.*; *see also* Compl. ¶ 9). "Client" is defined under the Consultant Agreement as "Thomas Maoli and/or [his] other affiliated entities." (*See* Consultant Agreement at 1, D.E. No. 1-2, ECF p. 16). "Purchase" is defined as "[t]he purchase or other acquisition of the business of Target Acquisitions or any portion thereof." (*Id.* ¶ 1). The Consultant Agreement does not expressly define "Target Acquisitions." (*See generally id.*).

Additionally, the Consultant Agreement contains an "Entire Agreement" section, which states that "[t]his is the entire Agreement between the parties pertaining to the subject matter, and supersedes all prior agreements, discussions, and understandings of the parties. No modifications to this Agreement shall be binding unless agreed in writing by the parties." (*Id.* ¶ 12).

Pursuant to the Consultant Agreement, Blue Sky negotiated the terms of an agreement whereby Celebrity Jaguar, LLC ("Celebrity"), an entity set up by Maoli for the purpose of purchasing Madison's assets, would purchase Madison's assets. (*See* Compl. ¶ 10). The terms of that agreement were memorialized in an Asset Purchase Agreement (the "APA"), which contains several provisions relevant to the Court's analysis of this Motion. (*Id.*; *see also* D.E. No. 1-2, ECF pp. 20-29, D.E. No. 1-3, ECF pp. 1-23, D.E. No. 1-4, ECF pp. 1-9, Ex. B to Compl. (collectively the "APA")).

First, the APA contains a "No Broker" Clause (the "NBC"), which provides as follows:

**No Broker.** Except for Blue Sky 1, LLC (Matthew J. Visconti, Jr.), the parties warrant and represent that neither have retained the services of a broker or salesperson in connection with the sale of the subject Premises and that there is no brokerage commission due in connection with this sale. The parties further warrant and represent to the other that it was not shown the subject Premises as a result of any efforts of a real estate broker or salesperson. Each party agrees to indemnify and hold harmless the other against and from any claims for any brokerage commissions and all costs, expenses, and liabilities in connection therewith,

including, without limitation, attorneys' fees and expenses, arising out of any conversations or negotiations had by such party with any broker.  BUYER shall be solely responsible for the fee owed Blue Sky 1, LLC, and such fee shall be paid at closing.

(*Id.* ¶ 11; APA ¶ 23, D.E. No. 1-3, ECF p. 8,).  The NBC represents the APA's only mention of Blue Sky.  "BUYER" is defined in the APA as "Celebrity Jaguar, LLC."  (APA, D.E. No. 1-2, ECF p. 20).

Second, the APA contains a provision that outlines the parties' understanding as to what constitutes the parties' agreement:

This Agreement and all related documents executed concurrently herewith represent the complete understandings between the parties and their respective legal counsel, and supersede all previous negotiation or representations as to all matters whether described in said Agreement or not.  This Agreement and all related documents executed concurrently herewith may be amended only be written instrument signed by both parties (or their respective legal counsel) and making express reference to the respective document to be amended.

(*Id.* ¶ 26(d), D.E. No. 1-3, ECF p. 10).

Third, the APA contains provisions recognizing certain rights of Jaguar.  For example, Paragraph 26(s) states:

**<u>Options; Rights of First Refusal</u>**.  Except for the right of the BUYER to acquire the Business pursuant to this Agreement, no other person or entity has any right to acquire all or any portion of the Business or the SELLER'S manufacturers' franchise rights or privileges other than [Jaguar] pursuant to the Dealership Agreement.

(*Id.* ¶ 26(s), D.E. No. 1-3, ECF p. 13).

Indeed, as the APA recognizes, Jaguar had certain rights pursuant to its Dealer Agreement with Madison, under which Madison sold Jaguar's motor vehicles.  (Compl. ¶ 7).  Among the various provisions of the Dealer Agreement is a provision restricting Madison's right to (1) "change [Madison's] ownership or management"; (2) "sell or otherwise transfer all or substantially all of the assets used in [Madison's] Jaguar operations"; or (3) "transfer any rights or obligations

- 4 -

under such Dealer Agreement (any of the foregoing referred to herein as an 'Ownership Proposal')." (*See* D.E. No. 1-4, ECF p. 13, Ex. D to Compl., Dealer Agreement ("Dealer Agr. Ex. Compl."); *see also* D.E. No. 5-5, Exhibit 4 to Declaration of Lee Maas, Performance Agreement Between Jaguar and Madison ("Perf. Agrmt.") ¶ 13).

A further Dealer Agreement provision grants Jaguar a "right of first refusal" ("ROFR") in the event Madison intended to implement any such Ownership Proposal. (Dealer Agr. Ex. Compl.; Perf. Agr., Ex. E – Jaguar Right of First Refusal to Purchase ("Def. ROFR")). The ROFR provides, in relevant part, that:

> [Jaguar] retains a [ROFR] with respect to any Ownership Proposal and [Jaguar] may exercise such right (i) without any obligation to undertake a review of a proposed purchaser's qualifications or to otherwise consider the merits of the Ownership Proposal, and (ii) in accordance with the following terms and conditions:
>
> a) In the event that [Madison] proposes and Ownership Proposal*, [Jaguar] shall have a ROFR to purchase* the stock or assets of [Madison's] dealership *on the same terms and conditions offered by [Madison] to, or agreed to by [Madison] with, any other person or entity*, regardless of whether the proposed purchaser or transferee buyer is qualified to be a . . . Jaguar-brand dealer.
>
> . . . .
>
> e) *[Jaguar] may assign its ROFR to any third party* selected by [Jaguar] in its discretion (the **"Assignee"**). *If there is such an assignment, [Jaguar] will guarantee full payment of the purchase price by the Assignee*. Before deciding whether to make such an assignment, [Jaguar] shall have the opportunity to discuss the terms of any applicable buy/sell agreement and any other agreements relating to the Ownership Proposal with any potential Assignee and to provide a copy of any such agreements or other materials to such Assignee.

(Compl. ¶ 17 (emphases added); Dealer Agr. Ex. Compl. (emphases added); *see also* Def. ROFR).

Despite the apparent agreement between Madison and Celebrity regarding the sale of Madison's assets to Celebrity, Madison did not ultimately sell its assets to Celebrity, Maoli, or one

of Maoli's affiliated entities.  (Compl. ¶ 35).  Instead, Jaguar exercised its ROFR, and subsequently assigned its ROFR to Land Rover of Parsippany, Inc. ("Land Rover").[2]  (*Id.* ¶¶ 16, 35).

Jaguar did so by way of a May 7, 2015 letter to Madison, which not only notified Madison of its exercise of the ROFR and assignment to Land Rover, but asserted that Land Rover was "ready, willing and able to purchase [Madison's] Assets on substantially the same terms and conditions (including the same purchase price) set forth in the APA."  (*Id.* ¶¶ 20, 24; *see also* D.E. No. 1-4 at ECF pp. 11-12, May 7, 2015 Letter from Jaguar to Dennis A. Squitieri of Madison Jaguar).  In or around July 2015, Land Rover purchased Madison's assets.  (Compl. ¶ 35).  Blue Sky demanded that Jaguar pay the Success Fee agreed to in the Consultant Agreement, but Jaguar refused to tender any payment.  (*Id.* ¶ 36).

## B.  Procedural History

Blue Sky filed this action on October 16, 2015 in the Superior Court of New Jersey, (Compl., D.E. No. 1-2, ECF p. 3), and Jaguar removed the matter to the District of New Jersey on January 12, 2016, (D.E. No. 1 at 4).  Blue Sky's Complaint seeks a declaratory judgment under New Jersey Court Rule 4:42-3 "to determine the rights of parties relative to the acts and/or omissions of Jaguar to prevent Blue Sky from obtaining the success fee it was due and owed for the sale of the assets of Madison Jaguar, LLC."  (Compl. ¶ 1).

Specifically, under the First Count of the Complaint, Blue Sky (1) alleges that it was a third-party beneficiary of the APA; (2) seeks to enforce the APA under N.J.S.A. 2A:15-2, (3) alleges that Land Rover stepped into the shoes of the "BUYER" under the APA when Jaguar exercised its ROFR and subsequently assigned it to Land Rover; and (4) alleges that Jaguar

---

[2]        Although it is not clear from the Complaint, it appears that, upon reaching agreement under the APA with Celebrity, Madison informed Jaguar of its Ownership Proposal, after which Jaguar exercised its ROFR to prevent execution of the APA between Madison and Celebrity.

permitted Land Rover to prepare and sign an asset purchase agreement for Madison that omitted Paragraph 23 (the NBC) of the APA; all requiring Jaguar to pay the Success Fee that Blue Sky alleges it is owed.  (*See id.* ¶¶ 19, 20, 29, 33, 39, 40, 42, 43, 44, 45).

Under the Second Count, Blue Sky alleges that Jaguar tortiously interfered with Blue Sky's rights because, "[b]ut for the acts/or omissions of Jaguar, . . . Blue Sky would have realized the benefits it was due under the Consultant Agreement and the APA."  (*Id.* ¶¶ 57, 58).

Jaguar filed the instant Motion to Dismiss.  (D.E. No. 5).  With Blue Sky's opposition, (D.E. No. 7), and Jaguar's reply, (D.E. No. 8), this matter is now ripe for review.

## III. LEGAL STANDARDS

### A. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  That rule has been construed to require that a complaint, to survive dismissal, "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [party] has acted unlawfully."  *Id.*; *see also id.* ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (quoting *Twombly*, 550 U.S. at 555)).  Notably, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the nonmoving party.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  But the court is not required to accept "legal conclusions," and

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citation omitted).

The Court's inquiry is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  In its evaluation, the Court properly considers the complaint, documents attached to or submitted with the complaint, matters incorporated by reference or integral to the claims, matters of which the Court may take judicial notice, matters of public record, orders, and other items of record in the case.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

### B.  Contract Interpretation

The Court is guided by the following general principles of contract interpretation.

"Courts cannot make contracts for parties.  They can only enforce the contracts which the parties themselves have made."  *Kampf v. Franklin Life Ins. Co.*, 161 A.2d 717, 720 (N.J. 1960) (citation and internal quotation marks omitted).[3]  "Generally, the terms of an agreement are to be given their plain and ordinary meaning."  *M.J. Paquet, Inc. v. New Jersey Dep't of Transp.*, 794 A.2d 141, 152 (N.J. 2002).  When interpreting a contract, the document must be "read . . . as a whole in a fair and common sense manner."  *Hardy ex rel. Dowdell v. Abdul-Matin*, 965 A.2d 1165, 1169 (N.J. 2009) (citation omitted).  "The [c]ourt should place the greatest weight on the express terms of the agreement," keeping in mind the central goal of contract interpretation: to

---

[3]       As both parties appear to agree that New Jersey law applies to this case, the Court applies New Jersey law in resolving this Motion.  *See UBI Telecom Inc. v. KDDI Am., Inc.*, No. 13-1643, 2014 WL 2965705, at *9 (D.N.J. June 30, 2014); *Sager v. Hoffman–La Roche, Inc.*, 2012 WL 3166630, at * 14 n.9 (N.J. Super. Ct. App. Div. Aug. 7, 2012) (per curiam) ("Because the parties agree that Florida substantive law applies here, we need not engage in the choice of law analysis otherwise called for by [New Jersey law], examining which State has the most significant relationship to each case.").

divine "the intention of the parties as it was at the time the agreement was executed." *See Laplace v. Laplace*, No. 03-4291, 2006 WL 83110, at *5-6 (D.N.J. Jan. 12, 2006) (citations omitted).

"[I]t is not the function of the court to make a better contract for the parties, or to supply terms that have not been agreed upon." *Graziano v. Grant*, 741 A.2d 156, 163 (N.J. Super. Ct. App. Div. 1999) (citation omitted). Accordingly, "where the terms of a contract are clear, . . . the court must enforce it as written," *Cty. of Morris v. Fauver*, 707 A.2d 958, 969 (N.J. 1998), and must "not make a better contract for either party," *Graziano*, 741 A.2d at 163 (citation omitted). Indeed, "[a] court has no power to rewrite the contract of the parties by substituting a new or different provision from what is clearly expressed in the instrument." *E. Brunswick Sewerage Auth. v. E. Mill Assocs., Inc.*, 838 A.2d 494, 497 (N.J. Super. Ct. App. Div. 2004) (citations omitted). But "a contract must be interpreted considering the surrounding circumstances and the relationships of the parties at the time it was entered into, in order to understand their intent and to give effect to the nature of the agreement as expressed by them." *Id.* (citation omitted).

## IV. DISCUSSION

Jaguar argues that Blue Sky's First Count "fails as a matter of law for at least three independent reasons." (D.E. No. 6, Defendant's Brief in Support of Motion to Dismiss ("Def. Mov. Br.") at 8). First, Jaguar argues that Blue Sky is not entitled to the Success Fee under the Consultant Agreement because neither Maoli nor his affiliated entities purchased Madison's assets, which was required by the plain terms of the Consultant Agreement in order for Blue Sky to be entitled to the Success Fee. (*Id.*). Second, Jaguar contends that its contractual obligations are defined by the Dealer Agreement, to which Blue Sky was neither a party nor third-party beneficiary, and that it discharged those obligations under the ROFR by causing Madison to receive the same consideration it would have received from a prospective purchaser. (*Id.* at 10).

Accordingly, Jaguar says, even if the Consultant Agreement entitled Blue Sky to the Success Fee in the transaction at issue, Jaguar would not have any contractual obligation to pay that fee. (*Id.*). Third, Jaguar argues that the APA's NBC imposes no obligation to pay Blue Sky the Success Fee and instead merely identifies which party—as between Celebrity and Madison—would be liable for Blue Sky's Fee if Blue Sky was ultimately entitled to it. (*See id.* at 13-14).

As to the Second Count, Jaguar argues that dismissal is warranted because "a tortious interference claim will not lie against a franchisor for exercising its contractual and/or statutory right of disapproval or of first refusal with respect to a proposed transfer." (*Id.* at 17). Additionally, Jaguar says, "Blue Sky was not entitled to the Success Fee under the terms of the Consultant Agreement or the APA. Thus, [Jaguar] could not have interfered with any such right." (*Id.* at 18).

For the reasons that follow, the Court agrees with Jaguar that neither the NBC nor any other provision of the APA created Blue Sky's right to a Success Fee or obligated any party to pay that Fee. The Court also agrees that the Consultant Agreement was the source of Blue Sky's right to any Success Fee, and that the event that would have triggered Blue Sky's right to that Fee did not occur. Finally, the Court agrees that Blue Sky's tortious interference claim must fail because Blue Sky was not entitled to the Success Fee under any of the contracts involved in this case and, thus, Jaguar could not have interfered with any right of Blue Sky.

**A. First Count – Blue Sky's Right to the Success Fee as a Third-Party Beneficiary**

Blue Sky alleges it is a third-party beneficiary of the APA.[4] (Compl. ¶ 39). But Blue Sky appears to allege different sources of the benefit—*i.e.*, the Success Fee—that it alleges it is due.

---

[4]        Because the Court concludes that Blue Sky is not entitled to the Success Fee under general principles of contract interpretation, the Court need not decide whether Blue Sky is, indeed, an intended third-party beneficiary of the APA. Similarly, the Court does not address Jaguar's arguments relating to Blue Sky's allegations that Jaguar and

(*See id.* ¶¶ 42, 45).  On one hand, Blue Sky alleges that "Section 23 of the APA expressly provides that Blue Sky was to receive a success fee from the purchaser of the assets of Madison."  (*Id.* ¶ 11).  Moreover, Blue Sky alleges that "the APA required the purchaser [of the assets of Madison] to pay a success fee to Blue Sky in connection with said transfer of assets."  (*Id.* ¶ 33; *see also* D.E. No. 7, Plaintiff's Brief in Opposition ("Pl. Opp. Br.") at 3 ("The APA Obligated the 'Buyer' to Pay the Success Fee to Blue Sky, Which Was a Third-Party Beneficiary of that Promise.")).  Thus, Blue Sky seems to allege that the APA, in and of itself, obliged the APA BUYER to pay Blue Sky its Success Fee.

On the other hand, Blue Sky "alleges [that] Maoli agreed to pay Blue Sky a 'success fee' upon the closing of his purchase of Madison Jaguar" and that "Maoli/Celebrity and Madison Jaguar incorporated this agreement into the APA by reference and agreed that Celebrity, as BUYER, would be solely responsible for payment of the success fee which affirmatively would be paid at closing."  (Pl. Opp. Br. at 3).  Indeed, prior to its allegations relating to the APA, the Complaint discusses the Consultant Agreement entered into between Blue Sky and Maoli, under which Blue Sky would earn its Success Fee, (Compl. ¶¶ 8, 9), which contemplates that the source of Blue Sky's right to the Success Fee was the Consultant Agreement.

Setting aside this apparent ambiguity, the Court finds that Blue Sky is not entitled to the Success Fee under either theory.  That is because the APA does not create Blue Sky's entitlement to the Success Fee, nor does it, in and of itself, create any enforceable obligation for the "BUYER" to pay that Fee.  And, the APA does not incorporate the Consultant Agreement by reference, nor does it reflect any intention by Madison and Celebrity to include in the APA any of the terms and conditions of the Consultant Agreement.  Finally, and perhaps most fundamentally, even if the

---

Land Rover stepped into the shoes of the "BUYER" under the APA; no matter if Jaguar and Land Rover can be considered to have done so, Blue Sky is not, in any event, entitled to the Success Fee it seeks.

APA had incorporated the Consultant Agreement by reference, Blue Sky was not entitled to the Success Fee under the terms and conditions of the Consultant Agreement, because, in particular, Blue Sky would only be entitled to the Success Fee "[i]n the event of any purchase of Madison Jaguar, by Client" (defined in the Consultant Agreement as Maoli and/or his affiliated entities), (*see* Consultant Agreement, D.E. No. 1-2, ECF pp. 16-17 & ¶ 5).  The Court discusses these reasons for dismissing Blue Sky's First Count in more detail below, in turn.

### 1.   The "No Broker" Clause and APA Do Not Entitle Blue Sky to a Success Fee

Neither the NBC nor the APA, in and of themselves, set forth any terms and conditions of the agreement that would permit Blue Sky to recover the Success Fee.

"A contract arises from offer and acceptance, and must be sufficiently definite so that the performance to be rendered by each party can be ascertained with reasonable certainty." *Baer v. Chase*, 392 F.3d 609, 618-19 (3d Cir. 2004) (internal quotation marks omitted) (citing *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992)).  "Therefore, parties create an enforceable contract when they agree on its essential terms and manifest an intent that the terms bind them." *Id.* at 619 (citations omitted).  "If parties to an agreement do not agree on one or more essential terms of the purported agreement courts generally hold it to be unenforceable." *Id.* (citation omitted).  "An agreement so deficient in the specification of its essential terms that the performance by each party cannot be ascertained with reasonable certainty is not a contract, and clearly is not an enforceable one." *Id.* (citation omitted).  Under New Jersey law, the price term "is an essential term of any contract." *Id.* (citation omitted).  Thus, in the absence of a term setting out the amount of compensation or a term specifying the manner or method of calculating such compensation, "the purported agreement is invalid." *See id.* (citations omitted).

Here, the NBC, which is the only APA provision that mentions Blue Sky, provides as follows:

> Except for Blue Sky 1, LLC (Matthew J. Visconti, Jr.), the parties warrant and represent that neither have retained the services of a broker or salesperson in connection with the sale of the subject Premises and that there is no brokerage commission due in connection with this sale.  The parties further warrant and represent to the other that it was not shown the subject Premises as a result of any efforts of a real estate broker or salesperson.  Each party agrees to indemnify and hold harmless the other against and from any claims for any brokerage commissions and all costs, expenses, and liabilities in connection therewith, including, without limitation, attorneys' fees and expenses, arising out of any conversations or negotiations had by such party with any broker.  BUYER shall be solely responsible for the fee owed Blue Sky 1, LLC, and such fee shall be paid at closing.

(APA ¶ 23, D.E. No. 1-3, ECF p. 8).

Clearly, the NBC contains no specific details regarding the fee owed to Blue Sky or how it may be calculated.  Moreover, none of the NBC's language sets forth the manner in which Blue Sky must perform to be entitled to the fee or any consideration that Blue Sky would provide in return for payment of that fee.  Indeed, the NBC does not contain terms and conditions like those set out in the Consultant Agreement, for example, which provides the rights and obligations of both Celebrity and Blue Sky, specifies performance, and announces any conditions to which the parties are subject.  (*See generally* Consultant Agreement, D.E. No. 1-2, ECF pp. 16-18).  In short, the NBC does not include any terms that would make it enforceable in and of itself.   As such, the APA simply does not contain all of the terms and conditions that would be required to create an enforceable obligation for any BUYER—let alone Jaguar—to pay Blue Sky's Success Fee.

To be sure, the NBC does include the sentence "BUYER shall be solely responsible for the fee owed Blue Sky 1, LLC, and such fee shall be paid at closing."  (APA ¶ 23, D.E. No. 1-3, ECF p. 8).  In light of the context of that sentence and the remaining plain language of the NBC, however, the Court finds the most reasonable reading of that sentence is to guarantee that Madison

- 13 -

would never be liable for any fee owed to Blue Sky.  Indeed, the NBC's preceding language all relates to the liability of either party for commissions that may be alleged to be owed by brokers, and seeks to hold each party harmless in the event that either of them negotiated with any broker not mentioned.  In no way does a logical reading of the NBC lead to the conclusion that the NBC obligates the BUYER to pay some unspecified fee to Blue Sky at the closing for some unspecified performance.

Accordingly, Blue Sky cannot obtain its Success Fee as a third-party beneficiary of the APA by looking solely to the NBC.  So, even if Jaguar, by exercising its ROFR, stepped into the shoes of "BUYER" in the APA—an issue the Court need not reach—Blue Sky would not be entitled to the Success Fee, because the APA does not, in and of itself, create Blue Sky's right to the Success Fee.  The source of Blue Sky's right to the Success Fee must be something other than the APA.  To that effect, Blue Sky also contends that the APA incorporates the Consultant Agreement by reference, (Pl. Opp. Br. at 3), which contention the Court now addresses.

## 2.  The APA Does Not Incorporate the Consultant Agreement By Reference

New Jersey law permits two or more writings to constitute a single contract even if those writings do not reference one another.  *Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn*, 983 A.2d 604, 617 (N.J. Super. Ct. App. Div. 2009) (citation omitted).  But the question of whether such writings should be construed as a single contract is determined by looking to the parties' intent.  *Id.* (citation omitted).  The "basic question" governing that inquiry "is whether the parties assented to a writing as the complete integration of their agreement."  *Id.* (citation omitted). Accordingly, the Court must examine whether Madison and Celebrity intended the APA to constitute their entire agreement, or whether those parties intended the Consultant Agreement to be part of the APA.

- 14 -

The Court finds that Madison and Celebrity did not intend the Consultant Agreement to be part of the APA.  First, the APA includes the following provision:

> This Agreement and *all related documents executed concurrently herewith represent the complete understandings between the parties* and their respective legal counsel, and supersede all previous negotiation or representations as to all matters whether described in said Agreement or not.  This Agreement and all related documents executed concurrently herewith may be amended only be written instrument signed by both parties (or their respective legal counsel) and making express reference to the respective document to be amended.

(APA ¶ 26(d), D.E. No. 1-3, ECF p. 10 (emphasis added)).

The Consultant Agreement cannot be considered to have been "executed concurrently" with the APA.  The Consultant Agreement was signed by Blue Sky on September 4, 2013 and by Maoli on September 5, 2013.  (*See* Consultant Agreement, D.E. No. 1-2, ECF p. 18; Compl. ¶ 8).  The APA was executed at some point in 2015; the Complaint alleges that "[i]n or around January 2015, Blue Sky negotiated an agreement by Madison to sell its assets and assign a real property lease to an entity to be formed by Maoli," (Compl. ¶ 10), and the APA bears the date "January, 2015," (APA, ECF p. 20), although it is unclear when it was signed by Madison and Maoli.  Giving Blue Sky the benefit of the inference, the earliest the APA could have been "executed" was January 1, 2015, close to sixteen months after Blue Sky and Maoli had executed the Consultant Agreement.

Given the relatively long period of time between the respective executions of the APA and the Consultant Agreement, the Court finds that the execution of the Consultant Agreement did not occur concurrently with the execution of the APA.  That finding is bolstered by the attachment to the APA of documents that are referenced in the APA and required to be signed by Maoli and Dennis Squitieri at the closing, such as the "Assignment and Assumption Agreement," (*see* APA ¶ 6(b), D.E. No. 1-2, ECF p. 25; D.E. No. 1-3, ECF pp. 20-22), and the "Consulting Agreement" between Celebrity and Dennis Squitieri, (*see* APA ¶ 18(a), D.E. No. 1-3, ECF p. 7; D.E. No. 1-4,

ECF pp. 4-9).  The attachment of those documents to the APA and their required execution at the closing, along with the absence of the Consultant Agreement from the documents attached to the APA, further bolsters that Celebrity and Madison did not intend the APA provision relating to "documents executed concurrently herewith," (*see* APA ¶ 26(d), D.E. No. 1-3, ECF p. 10), to refer to the Consultant Agreement between Blue Sky and Celebrity.

Second, the APA does not incorporate the Consultant Agreement by reference.  Under New Jersey law, "[i]n order for there to be a proper and enforceable incorporation by reference of a separate document, the document to be incorporated must be described in such terms that its identity may be ascertained beyond doubt and the party to be bound by the terms must have had 'knowledge of and assented to the incorporated terms.'"  *Quinn*, 983 A.2d at 617.  For example, in *Quinn*, the New Jersey Appellate Division found that a retainer agreement did not "define with sufficient specificity" the plaintiff law firm's "Master Retainer," which the plaintiff argued was incorporated by reference into the plaintiff's retainer agreement with the defendants.  *Id.* at 618. The panel noted that "[t]he retainer agreement dated January 6, 2006, and signed by the [defendants] on February 9, 2006, merely states that the client will be bound 'by our standard billing practices and firm policies.'"  *Id.*  According to the court, that "reference is in no way specific or identifiable such that the [law firm] practices and policies 'may be ascertained beyond doubt.'"  *Id.*  Indeed, the panel found, "[t]he reference contained no document dates or an identifiable publication number."  *Id.*  So, that minimal reference in the retainer agreement was insufficient to incorporate the law firm's "Master Retainer" by reference.  *Id.*

The circumstances here are analogous.  The Consultant Agreement is not mentioned anywhere in the APA.  And, the only reference to Blue Sky appears in the "No Broker" clause in the APA's Paragraph 23.  The only arguable references to anything owed to Blue Sky come in the

first and last sentences of the paragraph: "Except for Blue Sky 1, LLC (Matthew J. Visconti, Jr.), the parties warrant and represent that neither have retained the services of a broker or salesperson in connection with the sale of the subject Premises and that there is no brokerage commission due in connection with this sale. . . . .  BUYER shall be solely responsible for the fee owed Blue Sky 1, LLC, and such fee shall be paid at closing."  (APA ¶ 23, D.E. No. 1-3, ECF p. 8).  While a reasonable inference may be drawn from the phrase "retained the services of a broker" that one of the parties had entered into an agreement with Blue Sky, neither that reference nor the reference to "the fee owed Blue Sky 1, LLC" specify or in any way identify the Consultant Agreement or the terms and conditions that it included.  It does not identify the parties to that Agreement, the date on which it was executed or by whom, or where that Agreement may be located.  In short, the APA does not even reference the Consultant Agreement, much less incorporate it by reference.

Accordingly, the Court finds that the parties to the APA did not intend for the Consultant Agreement to be a part of the APA or for the Consultant Agreement to be incorporated into the APA by reference.  That conclusion is a further reason why Blue Sky is not entitled to the Success Fee it seeks in this matter because, even if Jaguar stepped into the shoes of Celebrity under the APA by exercising the ROFR, the APA did not include the Consultant Agreement—which is the only document that established Blue Sky's entitlement to any fee—as part of its terms and conditions.  But even more troublesome for Blue Sky is the fact that, as more fully discussed next, Blue Sky would not be entitled to the Success Fee even if the APA had incorporated the Consultant Agreement by reference.

### 3.  <u>Blue Sky is Not Entitled to the Success Fee Under the Consultant Agreement</u>

To reiterate, under the Consultant Agreement, Blue Sky would be paid the Success Fee "[i]n the event of any purchase of Madison Jaguar, by" Maoli or his affiliated entities.  (Consultant

Agreement ¶ 5, D.E. No. 1-2, ECF p. 17).  Blue Sky does not address Jaguar's argument that it did

not satisfy that specific requirement.  (*See generally* Pl. Opp. Br.).  To be sure, in opposition, "Blue

Sky . . . alleges [that] Maoli/Celebrity and Madison Jaguar incorporated [the Consultant

Agreement] into the APA by reference," (*id.* at 3), but Blue Sky does not respond to Jaguar's

argument that the event explicitly required by the Consultant Agreement to trigger Blue Sky's

entitlement to the Success Fee did not occur.  For the following reasons, the Court agrees with

Jaguar.

"In the absence of bad faith or duress, 'parties to a contract are generally free to impose

whatever conditions they may choose upon their contractual undertakings, the performance of

which is essential before they become bound by the agreement.'"  *McGough v. Broadwing*

*Commc'ns, Inc.*, 177 F. Supp. 2d 289, 298 (D.N.J. 2001) (quoting 13 Williston on Contracts § 38:2

(4th ed. 2000)).  "A conditional promise qualifies a promisor's duty to perform.  Where a party's

promise is expressly made dependent on the existence of a stated condition, unless 'waived,

excused, or prevented by the other party' such a condition must generally be 'literally met or

exactly fulfilled' before any binding contractual liability can arise."  *Id.* (quoting 13 Williston on

Contracts § 38:6).  So, "generally, 'no liability can arise on a promise subject to a condition

precedent until the condition is met.'"  *Allstate Redevelopment Corp. v. Summit Assocs., Inc.*, 502

A.2d 1137, 1140 (N.J. Super. Ct. App. Div. 1985) (quoting *Duff v. Trenton Beverage Co.*, 73 A.2d

578, 583 (N.J. 1950)).

"A condition precedent in a contract is the typical kind [of condition].  It must be performed

or happen before a duty of immediate performance arises on the promise which the condition

qualifies.  A condition precedent is either an act of a party that must be performed *or a certain*

*event that must happen* before a contractual right accrues *or contractual duty arises*. . . . .  A

condition precedent may relate either to the formation of contracts or to liability under them."
*Brumbaugh v. US Airways Grp., Inc.*, No. 09-5981, 2011 WL 1983356, at *3 (D.N.J. May 20, 2011) (emphasis added) (quoting *Sutherland v. Chesson*, 2006 WL 1000574, at *5 (N.J. Super. Ct. App. Div. Apr. 18, 2006)).

Here, the Consultant Agreement specifies its purpose, identifies the parties to which it applies, and dictates the conditions under which the parties must perform.  Specifically, the Consultant Agreement states that its "purpose . . . is to set forth the terms and conditions under which Blue Sky 1, LLC . . . agrees to serve Thomas Maoli and/or its [sic] other affiliated entities (collectively called 'Client') as a consultant and the sole and exclusive intermediary to effect the acquisition of the business of Madison Jaguar, Madison, NJ."  (Consultant Agreement, D.E. No. 1-2, ECF p. 16).  Most importantly, the Consultant Agreement specifies the condition upon which Blue Sky would receive its "Success Fee":  "*In the event of any purchase of Madison Jaguar by Client* during the term of this Agreement, or within twelve months following termination of this Agreement, *Client agrees to pay Blue Sky 1 at the closing of such Purchase a fee* ('Success Fee') . . . ."  (*Id.* ¶ 5 (emphases added)).

The Court is satisfied that the parties to the Consultant Agreement—Blue Sky and Maoli—intended that Blue Sky would receive a Success Fee only "[i]n the event of any purchase of Madison Jaguar by Client."  (*Id.*).  No other circumstances in which Blue Sky might be entitled to a fee are suggested or contemplated by the Consultant Agreement, and the Consultant Agreement identifies no parties—other than Madison, Blue Sky, and Maoli and/or his affiliated entities—whose involvement in Madison's sale or any other transaction might entitle Blue Sky to its Fee.  Thus, the Court finds that the plain language of the Consultant Agreement conditions Blue Sky's entitlement to its Success Fee upon the occurrence of a specific event: Thomas Maoli and/or his

affiliated entities—the "Client"—purchasing Madison's assets.  Stated differently, Madison's purchase by Maoli or his entity was a condition precedent to Blue Sky receiving its Fee from Maoli.

Madison was not purchased by Celebrity, Maoli, or another of his affiliated entities. (Compl. ¶ 35 ("The assets of Madison were sold to Parsippany [*i.e.*, Land Rover] in [sic] or about July 2015.")).  Accordingly, the Consultant Agreement's condition precedent to Blue Sky's receipt of the Success Fee was never met.  For this reason alone, Blue Sky is not entitled to the Success Fee that it seeks.[5]

**B.  Second Count – Tortious Interference**

As noted above, Jaguar argues that it could not have interfered with any right of Blue Sky to the Success Fee because Blue Sky was not entitled to the Success Fee in the first place.  (*See* Def. Mov. Br. at 17-18).

Blue Sky does not respond to this argument.  (*See* Pl. Opp. Br. at 8-12).  Instead, Blue Sky focuses its opposition on responding to another of Jaguar's arguments, that "[i]t is well established . . . that a tortious interference claim will not lie against a franchisor for exercising its contractual and/or statutory right of disapproval or of first refusal with respect to a proposed transfer."  (*Id.* at 8 (citing Def. Mov. Br. at 17); *see also id.* at 8-12).  Indeed, Blue Sky contends that "the interference was [Jaguar]'s removal of the commission fee provision from the asset purchase agreement [Jaguar] presented to [Land Rover]," (*id.* at 8), and that the Complaint's allegations adequately state a claim for tortious interference, (*id.* at 11-12).

---

[5]     The Court dismisses the First Count of the Complaint for the additional reason that Blue Sky entirely fails to address Jaguar's argument that Blue Sky could never be entitled to the Success Fee because it did not satisfy the Consultant Agreement's requirements.  Indeed, "[w]here an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant."  *Lawlor v. ESPN Scouts, LLC*, No. 10-5886, 2011 WL 675215, at *2 (D.N.J. Feb. 16, 2011) (citing *Conroy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir. 2009) ("We find this undeveloped argument has been waived.")).

But, for the same reasons discussed above, Blue Sky's tortious interference claim cannot succeed as a matter of law. Even if Jaguar had not allegedly removed the commission fee provision (*i.e.*, the NBC), from the asset purchase agreement presented to Land Rover, Blue Sky would not have been entitled to the Success Fee: (1) the APA did not create Blue Sky's entitlement to the Success Fee; (2) the APA did not incorporate the Consultant Agreement by reference; and (3) even if it did, neither Maoli nor any of his affiliated entities purchased Madison's assets, an event required to have occurred for Blue Sky to be entitled to its Success Fee. Accordingly, while Blue Sky's Complaint may adequately allege a tortious interference claim, as a matter of law, Blue Sky cannot succeed on that claim.

Under New Jersey law, "[a] complaint based on tortious interference must allege facts that show some protectable right—a prospective economic or contractual relationship." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989). Factual allegations must give rise to a "reasonable expectation of economic advantage" and establish that the plaintiff was in pursuit of such an advantage or business. *Id.* (citation and internal quotation marks omitted). Furthermore, a plaintiff must allege that the interference was done intentionally and maliciously, such that the harm was inflicted without any justification or excuse. *See id.* (citations and internal quotation marks omitted). Finally, a tortious interference claim must present factual allegations demonstrating that the interference was the cause of prospective gain—such that, absent the interference, it was reasonably probable that the victim would have received the benefit it anticipated—and that the injury caused damages. *See id.* (citations and internal quotation marks omitted).

Here, Blue Sky cannot establish that its expectation of receiving the Success Fee was reasonable. *See id.* First, the only event that would have triggered Blue Sky's right to a Success

Fee did not occur; indeed, Madison's assets were sold to Land Rover, not Maoli or Celebrity.  The Court finds that it would be unreasonable for Blue Sky to expect the Success Fee to be paid despite the nonoccurrence of a required condition plainly stated in the Consultant Agreement.  That is especially so considering that Blue Sky negotiated the terms of the agreement that became the APA, which, in turn, contained express provisions recognizing Jaguar's ROFR.

Second, the Court finds that it would be unreasonable for Blue Sky to expect payment of the Success Fee under the APA's NBC.  As discussed above, that clause did not create Blue Sky's entitlement to the Fee in and of itself; it contains no terms and conditions that are required to establish the existence of an enforceable agreement between the parties.  It may have been reasonable for Blue Sky to expect the BUYER—as opposed to Madison—to pay its Success Fee in the event that Blue Sky earned it (by satisfying the condition precedent), but Blue Sky could not reasonably expect to be paid the "fee" in the NBC simply because the fee is mentioned in the NBC.

Moreover, it was not reasonably probable that Blue Sky would have received the Success Fee even if Jaguar had included the NBC in the asset purchase agreement provided to Land Rover.  *See Printing Mart-Morristown*, 563 A.2d at 37.  Indeed, for the reasons already discussed, it was not only improbable that Blue Sky would receive its Success Fee upon purchase of Madison by Land Rover, but it was impossible.

Accordingly, because Blue Sky had no right to the Success Fee in this case, Jaguar could not have interfered with any such right.  The Court therefore dismisses the Second Count.

**C.  Granting Leave to Amend Would Be Futile**

Blue Sky has requested leave to re-plead, noting that dismissing a case with prejudice should be permitted only if granting leave to amend would be inequitable or futile.  (Pl. Opp. Br. at 13).  Jaguar argues that a failure to comply with pleading standards is not the issue; rather, "as

a matter of law, Blue Sky had no contractual right to the Success Fee and [Jaguar] had no contractual duty to pay it." (D.E. No. 8 at 13-14). Accordingly, Jaguar contends, "leave to re[-]plead should be denied as futile." (*Id.* at 14).

"[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted). Here, amendment would be futile because the entire basis for Blue Sky's case is its alleged entitlement to a Success Fee to which, as a matter of law, it is not entitled. No amendment would cure the deficiency of Blue Sky failing to satisfy the required condition contained in the Consultant Agreement, or the fact that the APA simply does not entitle Blue Sky to a Success Fee—even if Blue Sky could establish that Jaguar stepped into the shoes of the APA "BUYER" by exercising its ROFR. Accordingly, Blue Sky's Complaint is dismissed *with prejudice*.

## V.  CONCLUSION

For the foregoing reasons, Jaguar's Motion to Dismiss is GRANTED. Blue Sky's Complaint is dismissed *with prejudice*. An appropriate order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
